**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TINA FAGAN and MICHAEL FAGAN,<br><br>Plaintiffs,<br><br>v.<br><br>K. SCOTT FISCHER; VERONIKA M. FISCHER; BRIAN E. CARROLL; BRUCE W. BREITWEISER; FISCHER INVESTMENT CAPITAL, INC.; BYANA, LLC; PRIVATE CAPITAL, LLC; FUNDER, LLC; BOWDER, LLC; DUNBAR BRIETWEISER & COMPANY, LLP; JOHN/JANE DOES 1–5, fictitious individuals to be named after discovery; and ABC CORPS. 1–5, fictitious corporate entities to be named after discovery;<br><br>Defendants. | Civil Action No. 14-7013(FLW)<br><br>**AMENDED OPINION** |

**WOLFSON, District Judge**:

This case arises from a failed business relationship between Tina Fagan and Michael Fagan (collectively, "Plaintiffs") and various individuals and corporate entities named as defendants here, in the course of managing a real estate development in North Carolina. Plaintiffs' Complaint asserts claims, *inter alia*, for state and federal RICO[1] violations, conspiring to commit RICO violations, common law fraud, aiding and abetting common law fraud, equitable fraud, state and federal securities violations, breach of contract, and breach of fiduciary duty. Presently before the

---

[1] The term "RICO" relates to organizations which may be in violation of Racketeering Influenced and Corrupt Organization statutes. *See, e.g.*, 8 U.S.C. § 1962(c) (2012).

1

Court is a Motion to Dismiss filed by Defendants K. Scott Fischer, Veronika M. Fischer, Brian E. Carroll, Fischer Investment Capital LLC, Byana LLC, Private Capital LLC, Funder LLC, Bowder LLC, and Wealth Capital Group LLC (collectively, "Moving Defendants").[2] In their motion, Moving Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6), contending that the forum selection clause included in one of the contracts involved in the allegedly fraudulent scheme requires the dismissal of this case against them. For the following reasons, the Motion to Dismiss is **DENIED**.

## I. Factual Background and Procedural History

Plaintiffs became associated with Defendants Byana LLC ("Byana") and Fischer Investment Capital ("Fischer Capital") through both debt and equity investments in a real estate development project in North Carolina, known as the Derbyshire Project. *See* Compl. ¶ 8. From 2006 to the time of filing of this Complaint, Plaintiffs invested $1,000,000 in Defendant Byana in exchange for a 10% interest in the company, and Plaintiffs made debt investment loans in the amounts of $500,000 to Byana and $750,000 to Fischer Capital. *Id.*, ¶¶ 61–78. In the course of Plaintiffs' equity investment in Byana, Tina Fagan signed onto the Byana LLC Limited Liability Company Agreement ("Operating Agreement").[3] *See* Signature Page to Byana LLC Limited Liability Company Agreement.

The Operating Agreement purports to govern the organization and activity of Defendant Byana. *See generally* Operating Agreement. The document is comprised of eleven Articles, respectively governing the following: "Definitions," "Formation of Company," "Business of

---

[2] Plaintiffs asserted two additional claims against the non-moving defendants, Bruce W. Breitweiser and Dunbar, Breitweiser & Company, LLP, in this case.

[3] Plaintiffs argue that because they did not reference or cite to the Operating Agreement in their Complaint, the Court cannot consider it on this motion. As explained *infra*, because I find that the Operating Agreement is integral to the Complaint, I will reference it in this Opinion.

2

Company," "Rights and Duties of Manager," "Rights and Obligations of Members," "Contributions to the Company; Capital Accounts; Distributions; Related Matters," "Transferability," "Additional Members," "Dissolution and Termination," "Miscellaneous," and "Member Representations and Warranties." *See generally* Operating Agreement.

The Operating Agreement also contained a forum selection clause which provided that "ALL ACTIONS BROUGHT TO *INTERPRET OR ENFORCE* THIS AGREEMENT SHALL BE BROUGHT IN THE COURTS LOCATED IN THE STATE OF DELAWARE . . . ." Operating Agreement, Art. 10.6 (emphasis added). The Operating Agreement further included a choice-of-law provision that provided that the Agreement, including the forum selection clause, would be governed by Delaware state law. Whether the Operating Agreement was fully executed is disputed by the parties.

According to Plaintiffs, over the course of the parties' dealings, other documents were executed defining the nature of the relationships between the parties, including an unexecuted subscription agreement ("Subscription Agreement"), purporting to govern Plaintiff Tina Fagan's $1,000,000 equity investment, and executed promissory notes relating to Plaintiffs' debt investments. The Subscription Agreement contained a competing forum selection clause setting Illinois as the litigation forum,[4] while the notes contained no forum selection provisions.

The Derbyshire Project eventually collapsed financially, and Defendants Byana and Fisher Capital defaulted on the loans made by Plaintiffs. *See* Compl., ¶¶ 79, 85–86. As to Moving Defendants, Plaintiffs filed the present action on November 7, 2014, asserting fourteen claims for violations of various state and federal RICO statutes, conspiracy to violate the federal RICO statute, violations of state and federal securities law, common law fraud, unjust enrichment,

---

[4]   Neither party advocates for the position that Illinois is the proper forum here.

equitable fraud, breach of contract, and breach of fiduciary duty. *See generally* Compl. Importantly, Plaintiffs have not asserted any breach of contract claims relating to the Operating Agreement.

Plaintiffs allege that Moving Defendants collectively engaged in fraudulent and racketeering conduct surrounding the Derbyshire Project. *See id.*, ¶¶ 1–8. More specifically, Plaintiffs allege that "Defendants directly or indirectly induced equity investors to contribute capital contributions to become co-members of Defendant Byana, the corporate investment vehicle used to further the Derbyshire Project." *Id.*, ¶ 41. The communications between Plaintiffs and Defendants involved numerous representations by Defendants through pictures and oral representations. *Id.*, ¶¶ 47–53. These representations included the following assertions: first, that "investors in the Derbyshire Project would be fully protected against any losses because the investors owned all of the land related to the Derbyshire Project through their co-investment in Defendant Byana[;]" second, that "the land related to the Derbyshire Project had been bought through a 'cash purchase' and that the land was owned 'debt-free' and clear of any encumberances[;]" third, that "the value of the property alone would protect [Plaintiffs'] investments" even if the development project collapsed; fourth, that "all of the land [depicted as part of the project] was owned by Byana[;]" and fifth, that "the Derbyshire Project was a legitimate land improvement project, and that Defendants were at all times acting in good faith in furtherance of a legitimate investment opportunity." *Id.*, ¶¶ 47–51.

Plaintiffs further allege that the above representations were knowingly false. *Id.*, ¶ 52. And, Plaintiffs acted "[i]n reliance upon the above misrepresentations" by investing in Defendants Byana and Fischer Capital. *Id.*, ¶ 54. Plaintiffs aver that Defendants continued to make false

representations regarding the status of the investments and the project to deceptively reassure Plaintiffs. *Id.*, ¶¶ 89–91.

Moving Defendants filed the present motion on December 22, 2014, seeking dismissal of Plaintiffs' claims pursuant to the forum selection clause contained in the Operating Agreement. Plaintiffs oppose the motion on numerous grounds discussed *infra*.

## II. Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In the Third Circuit, "a 12(b)(6) dismissal is a permissible means of enforcing a forum selection clause that allows suit to be filed in another federal forum." *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001); *see also Crescent Int'l, Inc. v. Avatar Cmtys., Inc.*, 857 F.2d 943 (3d Cir. 1988) (affirming the use of a 12(b)(6) dismissal based on a valid forum selection clause). Accordingly, to the extent that the present forum selection clause is valid and enforceable, a Rule 12(b)(6) dismissal would be an appropriate relief.

## III. Discussion

*Scope of the Complaint and Examination of the Operating Agreement*

At the outset, the Court must address the threshold procedural issue of whether the Operating Agreement may be considered in deciding Moving Defendants' motion, when Plaintiff's Complaint neither cites to nor references the Agreement.

In the Third Circuit, in the context of a 12(b)(6) motion, "[a] document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.'" *Lum v. Bank of*

5

*America*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997)). This exception to the general exclusion of extrinsic evidence on 12(b)(6) motions exists to "prevent . . . the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent." *Burlington Coat Factory*, 114 F.3d at 1426 (citing *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). In other words, "[p]laintiffs cannot prevent a court from looking at the text of the documents on which its claim is based by failing to attach or explicitly cite them." *Id.*

A factual comparison of the present case to that in *Burlington Coat Factory* leads the Court to conclude that the Operating Agreement is "integral to" Plaintiff's Complaint here. In *Burlington Coat Factory*, investors sued a corporation alleging securities fraud, and according to the corporate defendants, the investors relied on a 1994 Annual Report in their complaint without expressly citing to it. *Burlington Coat Factory*, 114 F.3d at 1426. Despite its apparent absence in the complaint, the district court considered the extrinsic information in granting the defendants' motion to dismiss. *Id.* As here, the complaint in *Burlington Coat Factory* did not mention the Annual Report at all, but some of the factual allegations flowed from the document. *See id.* Accordingly, on appeal, the Third Circuit found that "it was reasonable for the district court to have looked to the 1994 Annual Report that defendants provided." *Id.*

Here, while Plaintiffs do not reference or cite to the Operating Agreement in their Complaint, Plaintiffs do allege that "[Moving] Defendants provided false and misleading information to Plaintiffs, resulting in Plaintiffs making an equity investment in Derbyshire for $1,000,000.00 . . . ." Compl., ¶ 8. Further, Plaintiffs allege that Moving Defendants "directly or

indirectly induced equity investors to contribute capital contributions to become co-members of Defendant Byana . . . ." *Id.*, ¶ 41. In exchange for such contributions, Plaintiffs allege that each "equity investor was promised 'the return of their investment capital plus 1% of the net profit for each $100,000.00 invested'" in the project. *Id.*, ¶ 42. Plaintiffs also note in their Complaint that "Tina Fagan became a limited partner in furtherance of her investment in Derbyshire," *Id.*, ¶ 9, without noting the mechanism by which her partner status was established. Indeed, based on these allegations, reference to the Operating Agreement is "integral to" factually framing the allegations in the Complaint. *See Burlington Coat Factory*, 114 F.3d at 1426. Thus, the Court will refer to the Operating Agreement in considering the present motion. However, examining the document does not suggest that the Court finds the contract valid or enforceable, particularly when the parties dispute the contract's execution.

      B.    *Scope of the Forum Selection Clause*

Having established that the Operating Agreement may be examined in conjunction with this Motion, the Court now turns to the Agreement's applicability to the claims at issue, when nearly all the claims sound in fraud.

Plaintiffs and Moving Defendants dispute numerous issues of both law and fact relating to the forum selection clause. Plaintiffs contend that the forum selection clause is invalid for a number of reasons: first, the claims are not based on the Operating Agreement but rather they are comprised of fraud and RICO violations; second, the language of the forum selection clause does not cover claims beyond those relating to breach of contract; third, the forum selection clause in the Operating Agreement is inconsistent with the forum selection clause in the Subscription Agreement and the lack of a forum selection clause in the promissory notes; and fourth, Moving

Defendants are not all adequately "closely related" to enforce the forum selection clause on behalf of non-signatories.

In response, Moving Defendants contend that the claims inherently center on the contract because it governed the relationships and obligations of the parties; that the language of the forum selection clause has been frequently interpreted to include tort claims relating to contracts; that the Operating Agreement is the only executed agreement in the case, and as such, its forum selection clause should control; and that, due to the allegations of RICO violations, all of the Moving Defendants are "closely related" as a matter of course. The parties further dispute whether the forum selection clause, even if valid, would be enforceable under the three-prong inquiry set forth in *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190 (3d Cir. 1983).[5]

While the Court disagrees with a number of these theories on both sides of the argument, it need not address most of the issues raised by either side. Rather, the scope of the forum selection clause is independently determinative. Even if the Court were to accept all of Moving Defendants' assertions—that the forum selection clause is enforceable, that Delaware state law applies pursuant to the choice-of-law provision in the Operating Agreement, that all of the Moving Defendants are closely related for the purposes of the forum selection clause, *and* that the enforcement of the forum selection clause would survive a *Coastal Steel* inquiry—the claims in this case are not covered under the forum selection clause at issue here, because only claims that relate to the interpretation and enforcement of the contract would fall within the purview of that clause.

Moving Defendants rely on the choice-of-law provision in the Operating Agreement in citing Delaware law for the interpretation of the forum selection clause. Assuming Delaware law

---

[5] *Coastal Steel* enunciated three circumstances in which the presumptive validity of a forum selection clause may be overcome. One such circumstance arises when the clause in question is the product of fraud. *See Coastal Steel*, 709 F.2d at 202.

governs, a motion to dismiss should be granted to enforce a forum selection clause when the contracting parties "use ***express language*** clearly indicating [that] the forum selection clause excludes all other courts before which those parties could otherwise properly bring an action." *Eisenbud v. Omnitech Corp. Solutions, Inc.*, 1996 WL 162245, at *1 (Del. Ch. Mar. 21, 1996) (emphasis added). This requirement reflects "the common law principle that a meeting of the minds on all essential contract terms is critical for contractual formation . . . ." *Hardwire, LLC v. Zero Int'l, Inc.*, 2014 WL 5144610, at *9 (D. Del. Oct. 14, 2014).

Notwithstanding the general standard, Moving Defendants cite *Ashall Homes Ltd. v. ROK Entm't Group, Inc.*, 992 A.2d 1239 (Del. Ch. 2010), to support their contention that the forum selection clause, ***regardless of contractual wording***, should encompass any and all claims related to the contract in which the forum selection clause is found. Motion Brief at 17–19. In particular, Moving Defendants assert that, "[u]nder Delaware law, forum selection clauses *must* be applied to tort claims 'arising out of, or depending upon, the contractual relationship in question.'" Motion Brief at 17 (quoting *Ashall Homes*, 992 A.2d at 1245) (emphasis added). However, in doing so, Moving Defendants omit the first half of the Delaware Chancery Court's sentence, in which the court made clear that "[f]orum selection clauses *can* be applied not only to contract-based claims but also tort claims arising out of, or depending upon, the contractual relationship in question." *Ashall Homes*, 992 A.2d at 1245 (emphasis added). Moving Defendants' assertion misconstrues Delaware's standard governing the enforcement of forum selection clauses.

Indeed, a review of Delaware law reveals the importance of contractual language in forum selection clauses. The forum selection clause provisions in cases interpreting Delaware law and citing *Ashall* almost universally involve far broader language than does the forum selection clause here; they frequently include language such as "any," relating to actions, or "arising out of," with

9

respect to the contracts in question. *See, e.g.*, *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 217 (3d Cir. 2015) (enforcing a forum selection clause the scope of which included "any action, suit or proceeding with respect to [a] Subscription Agreement" (internal quotation marks omitted)); *OTK Assocs., LLC v. Friedman*, 85 A.3d 696, 719 (Del. Ch. 2014) (refusing to enforce a forum selection clause for "[a]ll actions and proceedings arising out of or relating to this Agreement and the Other Agreements" when the claim hinged upon breach of fiduciary duty instead of breach of contract); *RWI Acquisition LLC v. Todd*, No. 6902–VCP, 2012 WL 1955279, at *3 (Del. Ch. May 30, 2012) ("Any lawsuit arising out of or in any way related to this Agreement [or] to the parties' relationship under this Agreement shall be brought only in those state or federal cou[r]ts having jurisdiction over actions arising in the State of New Mexico." (modifications in original) (internal quotation marks omitted)); *Scanbuy, Inc. v. NeoMedia Techs., Inc.*, No. 9465–VCN, 2014 WL 5500245, at *1 (Del. Ch. Oct. 31, 2014) ("[T]he Agreement's forum selection clause directs 'any dispute' between the parties to Georgia.").

Indeed, "[t]he Courts of Delaware defer to forum selection clauses," *Ashall Homes*, 992 A.2d at 1245, and even the most deferential courts would not consider a forum selection clause relating to "actions to interpret or enforce" an agreement to include claims for RICO violations, fraud, or other illegal business practices unrelated to contractual obligations. In only one case, which applied Delaware law, has a relatively narrow forum selection clause been enforced, and that enforcement came pursuant to a *breach of contract* claim—a completely distinct factual circumstance from the present case.[6] *See PPF Safeguard, LLC v. BCR Safeguard Holding, LLC*,

---

[6] While Plaintiffs have filed a breach of contract claim, that claim relates to the documents governing loans made by Defendants to Plaintiffs rather than to the Operating Agreement, which flowed from Plaintiffs' equity investment.

10

No. 4712–VCS, 2010 WL 2977392, at * 3 (Del. Ch. July 29, 2010) (involving a forum selection clause "for the enforcement of [the] Agreement").

Moreover, despite Moving Defendants' reliance on the *Ashall Homes*, that decision was based on a completely different set of facts. Primarily, the forum selection clauses discussed therein contained significantly broader language, stating in one agreement that "English courts shall have jurisdiction over *any disputes* arising hereunder[,]" *Id.* at 1250 (emphasis added), and in another agreement that "the parties submit to the exclusive jurisdiction of the English courts." *Id.* at 1246–47. In the former instance, the language clearly contemplates claims which go beyond breach of contract, and in the latter, the language of the clause is even broader. These clauses contrast sharply with the clause in the Operating Agreement here, which only contemplates "actions to interpret or enforce" the Agreement itself.

With that guidance in mind, the Court next interprets the scope of the clause. *See Ashall Homes*, 992 A.2d at 1245. In their briefing, Defendants make a number of comparisons between the language of the Complaint and that of the Operating Agreement. In so doing, Defendants contend that the similarities outlined in their briefing demonstrate that the Complaint -- which contains some language from the Operating Agreement's terms -- must fall under the purview of the forum selection clause. However, to the extent that the Complaint recites language from the Operating Agreement, it only does so for the purposes of laying factual foundation concerning the relationships of the parties. Indeed, contrary to Defendants' argument, the Court focuses on Plaintiff's claims and determines whether those claims involve interpreting or enforcing any provisions of the Operating Agreement. I do not so find.

To reiterate, the narrow language of the present forum selection clause applies only to "actions to enforce or interpret" the Operating Agreement. However, none of the claims in this

case require interpretation or enforcement of that agreement. Indeed, the Operating Agreement only governs the business operations of Defendant Byana. The Articles of the Agreement relate to business organization, managing responsibilities, member contributions, and other business logistics. While the alleged representation relating to equity established per dollar invested is contained in the Operating Agreement, *see* Operating Agreement Art. 1, Plaintiffs do not allege that this provision was breached. In fact, none of the claims for RICO violations, fraud, unjust enrichment, or related aiding and conspiracy claims pertains to contract disputes such that the Operating Agreement, which only defined the relationship among the members, would control or even be consulted.

I note only the breach of fiduciary duty and the breach of the promissory notes asserted against Moving Defendants depend on a contractual relationship between the parties, but even those claims do not involve the interpretation or enforcement of the Operating Agreement. The promissory notes are completely separate documents from the Operating Agreement; the merits of that claim do not depend on interpreting or enforcing the Operating Agreement. Moreover, fiduciary duties amongst partners in a limited liability partnership exist independent of the LLP's partnership agreement. *See OTK Assocs.*, 85 A.3d at 720-21 (noting that an arbitration clause does not apply to a claim for breach of fiduciary duty because such a claim did not "touch on contract rights or contract performance under the agreement containing the clause" (quoting *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149 (Del. 2002) (internal quotation marks omitted)). Accordingly, the present claims lie outside the scope of the plain meaning of the forum selection clause.

In short, even applying the Delaware law on which Moving Defendants rely, to allow a broad construction of a narrowly-tailored forum selection clause involved in this case to include

Plaintiffs' claims, particularly those for fraud and RICO violations, would not be appropriate under Delaware law. Therefore, this clause does not apply to the claims in the present case.[7]

## IV. Conclusion

For all of the reasons set forth above, the Court finds that the forum selection clause in the Operating Agreement does not cover actions for common law fraud, state and federal RICO violations, or any of the claims asserted in Plaintiffs' Complaint. Accordingly, Moving Defendants' Motion to Dismiss is **DENIED**.


**DATED**: July 14, 2015                                    /s/          Freda L. Wolfson
                                                            Freda L. Wolfson
                                                            United States District Judge

---

[7] While I have applied Delaware law in construing the Operating Agreement for the purposes of this Motion, I make no findings on the validity of that Agreement in this case.