**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **TINA FAGAN** and **MICHAEL FAGAN**, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civ. Action No.: 14-7013 (FLW)(TJB) |
| | : | |
| **K. SCOTT FISCHER**, **VERONIKA M.** | : | **OPINION** |
| **FISCHER**, **BRIAN E. CARROLL**, | : | |
| **BRUCE W. BREITWEISER**, **FISCHER** | : | |
| **INVESTMENT CAPITAL, LLC**, | : | |
| **BYANA, LLC**, **PRIVATE CAPITAL**, | : | |
| **LLC**, **FUNDER, LLC**, **BOWDER, LLC**, | : | |
| **WEALTH CAPITAL GROUP, LLC**, | : | |
| **DUNBAR BREITWEISER &** | : | |
| **COMPANY, LLP**, **JOHN/JANE DOES** | : | |
| **1-5**, fictitious individuals to be named after | : | |
| discovery, and **ABC CORPS. 1-5,** | : | |
| fictitious corporate entities to be named | : | |
| after discovery, | : | |
| | : | |
| Defendants. | : | |

**WOLFSON, United States District Judge:**

This case arises from a failed business relationship between plaintiffs Tina Fagan and

Michael Fagan (collectively, "Plaintiffs") and K. Scott Fischer, Veronika M. Fischer, Brian E.

Carroll, Byana, LLC ("Byana"), Fischer Investment Capital, LLC, ("Fischer Capital"), Private

Capital LLC ("Private Capital"), Funder, LLC, Bowder, LLC ("Bowder"), and Wealth Capital

Group, LLC ("Wealth Capital"), (collectively, "Fischer Defendants"), Bruce W. Breitweiser and

Dunbar Breitweiser & Company, LLP (collectively "Breitweiser Defendants,"), and John/Jane

Does and ABC Corps. 1-5 (together with Fischer Defendants and Breitweiser Defendants,

"Defendants"). Plaintiffs bring claims arising from their allegedly failed investments in (1) the

Derbyshire Project, a real estate development in North Carolina, and (2) Fischer Capital, an investment company focused on the acquisition and development of small market enterprises. Plaintiffs assert various fraud, securities, and contract related claims. Presently before the Court is a Motion to Dismiss filed by Mr. Breitweiser and his former employer, Dunbar Breitweiser & Company, LLP, allegedly accountants to Fischer Defendants. In their Motion, Breitweiser Defendants seek dismissal of all claims brought against them as either barred by the applicable statute of limitations or for failure to state a claim.

For the reasons set forth in this Opinion, Plaintiffs' claim against Breitweiser Defendants for violation of Section 12(a)(2) of the Securities Exchange Act of 1934 (the "Exchange Act"), 48 Stat. 881, *as amended*, 15 U.S.C. § 78a *et seq.* (Count V) is dismissed with prejudice. Plaintiffs' claims against Breitweiser Defendants for violation of Section 10(b) of the Exchange Act (Count IV), violation of the New Jersey Uniform Securities Law (the "NJUSL"), N.J.S.A. 49:3-47 *et seq.* (Count VI), common law fraud (Count VII), aiding and abetting common law fraud (Count VIII), equitable fraud (Count IX), conversion (Count X), and unjust enrichment (Count XI) are dismissed without prejudice. Breitweiser Defendants' Motion to Dismiss Plaintiffs' remaining claims for state and federal RICO[1] violations (Counts I & III), conspiring to commit federal RICO violations (Count II), negligent misrepresentation (Count XIII), professional negligence (Count XIV), and breach of fiduciary duty (Count XV) is denied.

---

[1] The term "RICO" relates to organizations which may be in violation of the federal Racketeer Influenced and Corrupt Organizations Act (the "RICO Act") or an equivalent state statute. *See, e.g.*, 18 U.S.C. § 1962(c).

2

I.     **Background**

The following allegations are taken from Plaintiffs' Complaint and are assumed as true for the purposes of review under Rule 12(b)(6). In 2006, on the advice of Mr. Fischer, Plaintiffs made equity and debt investments in Byana, a corporate investment vehicle used to fund the Derbyshire Project, a real estate development project in North Carolina. Compl. ¶¶ 41, 61-78. In exchange for a $1,000,000 investment, Ms. Fagan was given a 10% membership interest in Byana.[2] Compl. ¶¶ 61-63. Additionally, Plaintiffs gave Byana $500,000 in investment loans, pursuant to certain promissory notes. Compl. ¶¶ 64-78, 240. In 2007, again on the advice of Mr. Fischer, Plaintiffs gave investment loans, pursuant to certain promissory notes, totaling $750,000, to Fischer Capital, a private investment company founded by Mr. Fischer which was "focused on the acquisition and development of small market enterprises." Compl. ¶¶ 70-78, 240.

Plaintiffs allege that Mr. Fischer and Mr. Carroll, working on behalf of a criminal enterprise, to which all Defendants are members (the "Fischer Enterprise"), made material misrepresentations and omissions to Plaintiffs to induce them to invest in Byana and Fischer Capital. Compl. ¶¶ 6, 7-10, 47-48. Among these alleged misrepresentations, Mr. Fischer and Mr. Carroll purportedly claimed (1) that "investors in the Derbyshire Project would be fully protected against any losses because the investors owned all of the land related to the Derbyshire Project

_____

[2] The Court notes that the Complaint does not clearly identify whether Ms. Fagan is the sole owner of the equity in Byana, or whether Plaintiffs jointly own this equity. *See* Compl. ¶ 61. Both Plaintiffs and Breitweiser Defendants refer in their briefs to the Plaintiffs collectively when addressing claims arising from the Byana equity investment. And, indeed, Plaintiffs allege that they both suffered harm from the alleged illegal conduct on the part of Defendants related to this investment. The distinction is necessary, however, to determine who has been injured by Defendants' alleged actions, and who consequently, has standing to bring claims for these alleged injuries. The Court directs Plaintiffs to amend their Complaint to clearly indicate who owns each investment, including the debt investment loans.

through their co-investment in Byana"; (2) that "the land related to the Derbyshire Project had been bought through a 'cash purchase' and that the land was owned 'debt-free' and clear of any encumbrances"; (3) that "the value of the property alone would protect [Plaintiffs'] investments" even if the development project collapsed; (4) that "all of the land [depicted as part of the project] was owned by Byana"; and (5) that "the Derbyshire Project was a legitimate land improvement project, and that Defendants were at all times acting in good faith in furtherance of a legitimate investment opportunity." Compl. ¶¶ 5, 9, 47-51. Plaintiffs aver that Mr. Fischer and Mr. Carroll made these misrepresentations knowing they were false. Compl. ¶ 52. Additionally, Mr. Fischer allegedly promised favorable terms to Plaintiffs for the repayment of their debt investment loans, but never intended to repay these loans. Compl. ¶ 10. Consequently, Plaintiffs invested in Byana and Fischer Capital, acting "[i]n reliance upon the above misrepresentations." Compl. ¶ 54.

Although Plaintiffs initially received some interest payments on their loans, Plaintiffs allege that in 2008, Fischer Capital defaulted on its loans, and in 2009, Byana did the same. Compl. ¶ 79. Following these defaults, Mr. Fischer allegedly made numerous false representations to Plaintiffs regarding the success and status of the Derbyshire Project, as well as the financial health of Fischer Capital. *Id.* Based on these reassurances, Plaintiffs agreed to restructure their loans, which postponed the repayment deadlines until 2010. Compl. ¶¶ 89-91.

However, in 2010, Mr. Fischer informed Plaintiffs that Byana would be unable to continue making interest payments on the loans, because it required immediate capital to pay off a $3.8 million note secured by the property related to the Derbyshire Project. Compl. ¶ 86. Based on further alleged misrepresentations and false reassurances from Mr. Fischer, Plaintiffs agreed to forgo receiving their monthly interest payments under the Byana loan and agreed to consolidate the Fischer Capital loans into a single loan, due on January 1, 2013. Compl. ¶¶ 88-95. At this point,

4

according to Plaintiffs, Fischer Capital had only repaid $50,000 of the principal of Plaintiffs' loans, and $700,000 remained outstanding. Compl. ¶ 93.

On January 1, 2013, Fischer Capital again defaulted on its loans. Compl. ¶ 96. Mr. Fischer allegedly continued to represent that Fischer Capital "was financially healthy while at all times knowing this was not true." Compl. ¶ 97.

On June 22, 2013, Ms. Fagan received a notice from the U.S. Internal Revenue Service (the "IRS") that she would be audited based on her failure to report income from 2011 – $16,877.00 in interest revenue and $23,658.00 in capital gains related to her membership interests in Byana. Compl. ¶¶ 98-99. Ms. Fagan, however, purportedly did not receive any interest payments from Byana in 2011, and had not been apprised of any capital gains. Compl. ¶ 99. Plaintiffs contacted Mr. Fischer and Breitweiser Defendants, as accountants of Byana, to inquire about these discrepancies and request Ms. Fagan's previously unreceived tax documents from Byana for the years 2010, 2011, and 2012. Compl. ¶ 100. Through early 2014, according to Plaintiffs, Mr. Fischer and Breitweiser Defendants refused to provide Plaintiffs with these tax records. Compl. ¶¶ 102-04.

Plaintiffs allege that in 2011, Breitweiser Defendants made fraudulent adjustments to Byana's books and knowingly made false tax statements on behalf of Byana, which ultimately resulted in Ms. Fagan's audit. Compl. ¶¶ 262-64. Plaintiffs rely on an email communication between Mr. Fischer and Mr. Breitweiser, in which Mr. Fischer stated that "Bruce needs to use his 'secret sauce recipe,'" to allege that Breitweiser Defendants regularly falsified Byana's financial records and tax returns. Compl. ¶ 264. Additionally, Plaintiffs allege that Breitweiser Defendants falsely claimed that they were not authorized to provide Plaintiffs with the requested tax records,

"despite knowing that [Ms. Fagan] was a member of [Byana] and fully entitled to this information." Compl. ¶¶ 105, 141.

Finally, in mid-2014, Plaintiffs "began to realize that Defendants had worked together in furtherance of a scheme to defraud them out of millions of dollars through misrepresentations and deceit." Compl. ¶ 106. Specifically, in June 2014, Plaintiffs discovered that Byana did not own all of the real estate involved in the Derbyshire Project, but rather Mr. Fischer and his wife, Ms. Fischer, through their control of Bowder, and Mr. Carroll, through his control of Wealth Capital, owned at least 50% of the land related to the Derbyshire Project. Compl. ¶ 107. Additionally, in 2014, Plaintiffs discovered that third parties had brought actions against Mr. Fischer and Private Capital for injuries arising from similar equity and debt investments in other real estate development projects. Compl. ¶ 109.

Consequently, on November 7, 2014, Plaintiffs filed the instant Complaint against Defendants, asserting claims for violations of state and federal RICO statutes, conspiring to commit RICO violations, common law fraud, aiding and abetting common law fraud, equitable fraud, state and federal securities violations, conversion, unjust enrichment, breach of contract, negligent misrepresentation, professional negligence, and breach of fiduciary duty.[3] *See generally* Compl. ¶¶ 123-283. In the instant matter, Breitweiser Defendants move to dismiss all claims against them for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

_____

[3] Plaintiffs bring the majority of their claims against all Defendants, including Breitweiser Defendants. However, Plaintiffs assert a breach of contract claim against only Mr. Fischer, Byana, and Fischer Capital, bring negligent misrepresentation and professional negligence claims against Breitweiser Defendants alone, and assert a breach of fiduciary duty claim against only Mr. Fischer and Breitweiser Defendants.

## II.    Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations and citations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (quotations and citations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement;

to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (quotations and citations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 2016 U.S. App. LEXIS 366, at *10 (3d Cir. Jan. 11, 2016) (quotations and citations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quotations and citations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at *10-11 (quotations, brackets, and citations omitted).

Additionally, Fed. R. Civ. P. 9(b) "imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). To satisfy this heightened pleading standard, a plaintiff must state the circumstances of his alleged cause of action with "sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004)). Specifically, the plaintiff must plead or allege the "date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3 at 200 (citing *Lum*, 361 F.3d at 224). Indeed, the Third Circuit has advised that, at a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany 'the first paragraph of any newspaper

8

story'—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (quoting *In re Rockefeller*, 311 F.3d at 216).

Finally, in addition to Rule 9(b)'s heightened pleading requirements, Congress enacted the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Pub. L. No. 104-67, 109 Stat. 737 (1995), to require an even higher pleading standard for plaintiffs bringing private securities fraud actions. *In re Suprema*, 438 F.3d at 276. The purpose of requiring particularized pleadings is to prevent abusive securities litigations. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("Private securities fraud actions . . . if not adequately contained, can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law"); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006) (identifying "ways in which the class-action device was being used to injure the entire U.S. economy" and listing examples such as "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests, and manipulation by class action lawyers of the clients whom they purportedly represent . . ." (quotations and citations omitted)).

The PSLRA provides two distinct pleading requirements, both of which must be met in order for a complaint to survive a motion to dismiss. *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir.2009). First, under 15 U.S.C. § 78u-4(b)(1), the complaint must "specify each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity." *Winer Family Trust v. Queen*, 503 F.3d 319, 326 (3d Cir.2007) (construing 15 U.S.C. § 78u-4(b)(1)). Second, the complaint must, "with respect to each act or omission alleged to violate [the statute], state with particularity facts giving rise to a strong inference that the defendant acted with the required state

9

of mind." 15 U.S.C. § 78u-4(b)(2).[4] Both provisions of the PSLRA require facts to be pled with

"particularity." *Avaya*, 564 F.3d at 253. This particularity language "echoes precisely Fed. R. Civ.

P. 9(b)." *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir.1999). Indeed, although the

PSLRA replaced Rule 9(b) as the pleading standard governing private securities class actions, Rule

9(b)'s particularity requirement "is comparable to and effectively subsumed by the requirements

of [section 78u-4(b)(1) of] the PSLRA." *Avaya*, 564 F.3d at 253 (citations omitted).

## III.   Analysis

### i.   *Statute of Limitations*

At the outset, Breitweiser Defendants contend that the following claims are barred by the

applicable statute of limitations: (1) Section 12(a)(2) of the Exchange Act, (2) Federal RICO, (3)

New Jersey RICO, and (4) the NJUSL. To succeed on a motion to dismiss on the basis of statute

of limitations, the defendant must demonstrate that "the time alleged in the statement of a claim

---

[4] The PSLRA states, in pertinent part:
(b) Requirements for securities fraud actions
  (1) Misleading statements and omissions
  In any private action arising under this chapter in which the plaintiff alleges that the defendant-
    (A) made an untrue statement of a material fact; or
    (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.
  (2) Required state of mind
    (A) . . . In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.
15 U.S.C. §§ 78u-4(b)(1), (2).

shows that the cause of action has not been brought within the statute of limitations." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002)). "However, [i]f the [time] bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.* (quoting *Johnson*, 313 F.3d at 134-35) (quotations omitted).

### a.   Statute of Limitations of Section 12(a)(2) of the Exchange Act

Plaintiffs' Section 12(a)(2) claim is based on allegations that Defendants made misrepresentations or material omissions to Plaintiffs regarding the nature of Byana, the state of the Derbyshire Project, and Defendants' own illicit intentions, which induced Plaintiffs to purchase $1,000,000 in membership interests in Byana.[5] Compl. ¶¶ 174-87.

Claims under Section 12(a)(2) of the Exchange Act[6] must be "brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence," and "[i]n no event shall any such action be brought to enforce a liability created . . . under [Section 12(a)(2)] more than three years after the sale [of the security]." 15 U.S.C. § 77m. This statute creates a one-year statute of limitations, measured from the discovery of the cause of action, and framed by a three-year statute of repose, measured from the sale of the security at issue. *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 570 (D.N.J. 2002); *Sundholm v. eSuites Hotels LLC*, Civ. No. 14-1996, 2014 WL 5449975, at *4

---

[5] And therefore, on this Motion, while Plaintiffs allege that only Ms. Fagan had a membership interest in Byana, both parties refer to Plaintiffs collectively vis-à-vis all securities-related claims, and therefore, the Court will deem these claims as having been asserted by both Plaintiffs.
[6] The Court notes that Breitweiser Defendants have raised a statute of limitations defense as to the claim brought under Section 12(a)(2) of the Exchange Act, but not the claim brought under Section 10(b) of the Exchange Act.

(D.N.J. Oct. 27, 2014). As such, the three-year time frame "serves as an absolute bar to any claims brought more than three years after accrual, regardless of when a plaintiff discovered or could have discovered that he had a claim." *See Del Sontro*, 223 F. Supp. 2d at 570 (citing *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991)). Additionally, "[i]t is clearly established that equitable tolling is inapplicable to the one-and-three year limitation periods of securities fraud actions." *Del Sontro*, 223 F. Supp. 2d at 573 (citing *Lampf,* 501 U.S. at 363). As the United States Supreme Court held in *Lampf*:

> it is evident that the equitable tolling doctrine is fundamentally inconsistent with the 1– and 3–year structure. The 1–year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary. The 3–year is a period of repose inconsistent with tolling . . . the purpose of the 3–year limitation is clearly to serve as a cutoff.

*Lampf*, 501 U.S. at 363.

Thus, even if Plaintiffs only discovered Defendants' alleged fraud within one year of bringing their claims, so long as Plaintiffs purchased the equity in Byana more than three years before they filed their lawsuit, any claims under Section 12(a)(2) will be barred by the statute of limitations, without any equitable tolling available. Here, Plaintiffs allege that they purchased the membership interests in Byana in early 2007, discovered the alleged fraud in mid-2014, and subsequently brought their claim less than one year later, on November 7, 2014. Compl. ¶¶ 57-61, 106. However, because Plaintiffs' Section 12(a)(2) claim was brought more than three years after the purchase of the equity in 2007, such claim is barred by the three-year absolute cutoff. Accordingly, this claim against Breitweiser Defendants is dismissed with prejudice. [7]

---

[7] While it appears that Plaintiffs' Section 12(a)(2) claim may also be susceptible to dismissal against Fischer Defendants, I dismiss this claim only as it pertains to Breitweiser Defendants, because Fischer Defendants have not moved to dismiss.

**b.   Statute of Limitations of Federal RICO and New Jersey RICO claims**

The Supreme Court held in *Agency Holding Corp. v. Malley-Duff & Assoc.*, 483 U.S. 143, 146, 156 (1987) that a four-year statute of limitations applies to civil RICO claims. *Forbes v. Eagleson*, 228 F.3d 471, 483 (3d Cir. 2000). It is well-settled law that the same four-year statute of limitations period also applies to New Jersey RICO claims. *Cetel v. Kirwan Financial Group, Inc.*, 460 F.3d 494, 510 (3d Cir. 2006) (citing *State v. Ball*, 661 A.2d 251 (N.J. 1995)) (holding that because the New Jersey RICO statute mirrors the federal RICO Act, the four year statute of limitations applies to both federal RICO and New Jersey RICO claims).

In determining when a RICO claim accrues, the Third Circuit applies the discovery rule, "whereby a RICO claim accrues when plaintiffs knew or should have known of their injury." *Cetel*, 460 F.3d at 507 (quoting *Mathews v. Kidder Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001)). "[T]his rule has 'both subjective and objective' components and, with respect to the subjective, 'a claim accrues no later than when the plaintiffs themselves discover their injuries.'" *Cetel*, 460 F.3d at 507 (quoting *Mathews*, 260 F.3d at 252). However, the objective components of the inquiry require the court to "determine when plaintiffs should have known of the basis of their claims, which depends on whether [and when] they had sufficient information of possible wrongdoing to place them on inquiry notice or to excite storm warnings of culpable activity." *Id.* (quotations and citation omitted). Under the objective component of the discovery rule, a claim does not accrue until a reasonably diligent plaintiff would have discovered the violation. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (applying the discovery rule to the statute of limitations for a private securities fraud action, provided under 28 U.S.C. § 1658(b)(1)).

Here, Plaintiffs allege that it was in mid-2014, less than one year before filing suit on November 7, 2014, that they "began to realize that Defendants had worked together in furtherance

13

of a scheme to defraud them out of millions of dollars through misrepresentations and deceit." Compl. ¶ 106. In June 2014, Plaintiffs learned that Byana did not own the Derbyshire Project real estate in its entirety, and that other investors had brought suit against Mr. Fischer and Private Capital for fraud. Compl. ¶¶ 107, 109. However, Breitweiser Defendants contend that the first "storm warnings" of fraudulent activity occurred either in 2008 and 2009, when Byana and Fischer Capital first failed to pay off their loans, or in late 2010, when Plaintiffs were first informed by Fischer that Byana did not own the real estate related to the Derbyshire Project debt-free, and that there were outstanding debts. *See* Compl. ¶¶ 79, 86. Breitweiser Defendants argue that these "storm warnings" should have put Plaintiffs on notice of Defendants' alleged fraudulent activity, and that reasonably diligent investigation would have uncovered their injuries more than four years before Plaintiffs brought their claims. The dispute here, centers on the objective component of the discovery rule.

First, looking only to the allegations of the Complaint, I disagree with Breitweiser Defendants that the failure to make payments to Plaintiffs by Byana and Fischer Capital in 2008 and 2009, should have put Plaintiffs on inquiry notice of their potential injuries. Indeed, Plaintiffs allege that at the time of the defaults, "Mr. Fischer, made further misrepresentations regarding the success and status of the Derbyshire Project as well as the financial health of Fischer Capital to further their fraudulent schemes and to further induce Plaintiffs to enter into loan modification terms." Compl. ¶ 79. Taking these allegations as true, it would have been reasonable for Plaintiffs to assume that the defaults were the result of legitimate business setbacks, rather than the result of fraud. Therefore, reasonably diligent plaintiffs may not have perceived the alleged circumstances as "storm warnings" of fraud, or pursued any further investigations into the matter.

As to the revelation, in late 2010, of the true ownership of the Derbyshire Project real estate, however, the Court agrees that this direct contradiction of Mr. Fischer and Mr. Carroll's earlier claims that the property was owned "debt-free," should have put Plaintiffs on inquiry notice that they may be the victims of fraud. This discovery should have been especially significant to Plaintiffs, because they invested in Byana primarily upon the assurance that its real property assets would insulate their investment from any losses. Compl. ¶ 47. Indeed, at that point in time, any reasonably diligent plaintiffs would have begun inquiries into the origins of the $3.8 million loan secured by the real estate, and whether there were any other loans outstanding. However, without a more specific date for this discovery, "late 2010" may mean sometime after November 7, 2010, which is within four years of the date of filing. Thus, reasonably diligent plaintiffs would not have necessarily discovered the basis for their claim by November 7, 2010 – four years prior to the filing of the Complaint. Accordingly, it is not apparent on the face of the Complaint that, objectively, Plaintiffs should have known of their injury more than four years before the date they filed this action. Therefore, at this juncture, Plaintiffs' federal and New Jersey RICO claims are not subject to dismissal based upon the statute of limitations.

### c.  Statute of Limitations of the NJUSL

The statute of limitations for civil claims brought under the NJUSL is "two years after the contract of sale or the rendering of the investment advice, or . . . two years after the time when the person aggrieved knew or should have known of the existence of his cause of action, whichever is later." N.J.S.A. 49:3-71(g). Under this language, New Jersey courts also apply the discovery rule, measuring the two-year bar from the date "the plaintiff learns, or reasonably should learn, the existence of a state of facts that may equate in law with a cause of action." *Bramblewood Inv'rs,*

15

*Ltd. v. C & G Associates*, 619 A.2d 1332, 1334 (N.J. Law Div. 1992) (quotations and citation omitted); *see also Petruzzi v. Kobrin*, 442, 575 A.2d 80, 81 (N.J. Law Div. 1989).

Here, Plaintiffs' NJUSL claim is based on their allegations that Defendants knowingly made numerous material misstatements and omissions in the course of selling membership interests in Byana to Plaintiffs. Compl. ¶ 200. As discussed *supra*, Plaintiffs purchased the membership interests in Byana seven years before bringing suit, well beyond the two-year bar. Additionally, Plaintiffs reasonably should have begun their investigation into Byana sometime in late 2010, when they discovered Mr. Fischer and Mr. Carroll's misrepresentations regarding the debt status of the Derbyshire Project real estate. Certainly, through any reasonable inquiry, Plaintiffs would have discovered their injury and Defendants' alleged fraud within two years. Therefore, under the facts alleged, Plaintiffs should have known the existence of their NJUSL cause of action more than two years before they filed their Complaint.

Nevertheless, Plaintiffs assert that Breitweiser Defendants have failed to address "other equitable principles that apply to afford Plaintiffs relief from a statute of limitations attack, including the doctrine of equitable estoppel. . . ." Pls.' Br. in Opp'n to Rule 12(b)(6) Mot. to Dismiss Filed by Defs. Bruce W. Breitweiser and Dunbar Breitweiser & Company, LLP ("Pls.' Opp'n Br.") 6. However, once a defendant has raised a statute of limitations defense to a claim, is the plaintiff's burden to establish the facts necessary to justify the application of equitable tolling; it is not, as Plaintiffs assert, the defendant's burden to show that equitable tolling does not apply. *Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1419 (2012). Importantly, Plaintiffs

provide no argument whatsoever as to why equitable estoppel should apply here.[8] The doctrine of equitable tolling requires fact-intensive analysis. *See Villalobos v. Fava*, 775 A.2d 700, 707 (N.J. App. Div. 2001) ("[E]quitable tolling of a statute of limitations occurs when a plaintiff is misled as to the real reason for demotion or termination and as a result fails to act within the prescribed time limit. Typically the doctrine is applied 'where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" (citation omitted)). Plaintiffs have not supplied the Court with a factual basis to toll the statute of limitations.

Therefore, Plaintiffs' NJUSL claim against Breitweiser Defendants is dismissed without prejudice based upon the statute of limitations four-year bar.

### ii. *Violation of Section 10(b) of the Exchange Act*

The Securities Act of 1933 (the "Securities Act"), 48 Stat. 74, *as amended*, 15 U.S.C. § 77a *et seq.*, and the Exchange Act, 48 Stat. 881, *as amended*, 15 U.S.C. § 78a *et seq.*, were enacted to ensure "full and fair disclosure of the character of securities sold in interstate and foreign commerce and through the mails, and to prevent frauds in the sale thereof," and "to provide for

---

[8] "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990); *see also Haagensen v. Pennsylvania State Police,* 490 F. App'x 447, 455 (3d Cir. 2012) ("[A]n argument consisting of no more than a conclusory assertion . . . (without even a citation to the record) will be deemed waived." (quotations and citation omitted); *United States v. Hoffecker*, 530 F.3d 137, 162 (3d Cir. 2008) ("An appellant's brief must contain his or her argument, which must incorporate appellants' contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies . . . ." (quotations and citation omitted)); *Africa v. Digulielmo,* Civ. No. 04-447, 2004 WL 2360419, at *31 (E.D.Pa. Oct. 20, 2004) ("[the] court will not conduct legal research on behalf of [a party] in order to determine whether there is [authority] to support [his argument]"); *Auto Owners Ins. Co. v. LA Oasis, Inc.*, Civ. No. 2:04 CV 174, 2005 WL 1313684, at *14 (N.D.Ind. May 26, 2005) ("courts need not and indeed should not expend limited judicial resources in researching, refining, and otherwise fleshing out arguments the parties themselves do not adequately support") (citation omitted)).

the regulation of securities exchanges and of over-the-counter markets operating in interstate and

foreign commerce and through the mails, to prevent inequitable and unfair practices on such

exchanges and markets . . . ." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 725, 728

(1975). Section 10(b) of the Exchange Act states, in pertinent part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means
> or instrumentality of interstate commerce or of the mails, or of any facility of any
> national securities exchange . . .
>> (b) To use or employ, in connection with the purchase or sale of any security
>> registered on a national securities exchange or any security not so registered, or
>> any securities-based swap agreement any manipulative or deceptive device or
>> contrivance in contravention of such rules and regulations as the Commission
>> may prescribe as necessary or appropriate in the public interest or for the
>> protection of investors.

15 U.S.C. § 78j(b). In 1942, under the authority granted to it by this statute, the SEC promulgated

Rule 10b-5, 17 C.F.R. § 240.10b-5. *Blue Chip*, 421 U.S. at 729. Rule 10b-5 provides, in pertinent

part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means
> or instrumentality of interstate commerce, or of the mails or of any facility of any
> national securities exchange:
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material
> fact necessary in order to make the statements made, in the light of the
> circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would
> operate as a fraud or deceit upon any person,
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. Although the Exchange Act does not expressly provide for a private cause

of action, the Supreme Court has long held that such a cause of action exists. *See Blue Chip*, 421

U.S. at 729 (citing *Superintendent of Insurance v. Bankers Life & Cas. Co.*, 404 U.S. 6, 13 n. 9

(1971)).

A cause of action under Rule 10b-5 consists of the following elements: "(1) a material misrepresentation . . . (2) scienter, i.e., [defendant's] wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to ... as 'transactional causation'; (5) economic loss; and (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005) (citations omitted); *see also McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007). Any securities fraud claim brought under Rule 10b-5 must be pled with particularity, pursuant to the PSLRA, 15 U.S.C. §§ 78u-4(b)(1), (2). *In re Suprema*, 438 F.3d at 276.

Here, Plaintiffs allege that Defendants violated Rule 10b-5 by directly, indirectly, or acting in concert, making misrepresentations to Plaintiffs regarding the nature of Byana and the Derbyshire Project, and omitting material information regarding Defendants' fraudulent intentions; these misrepresentations and omissions induced Plaintiffs to purchase $1,000,000 in membership interests in Byana.[9] Compl. ¶¶ 174-87. Breitweiser Defendants contend that Plaintiffs have failed to plead that there was a connection between Breitweiser Defendants' alleged misrepresentations and the purchase or sale of a security, because all alleged misrepresentations occurred after Plaintiffs had already purchased equity in Byana.[10] Indeed, all of the specific alleged acts taken by Breitweiser Defendants, i.e. cooking the books, filing false tax returns, and refusing to provide Plaintiffs with tax records and misrepresenting their reasons for doing so, occurred after

---

[9] Plaintiffs do not bring securities fraud claims based on their debt investments in Byana or Fischer Capital. The Court, again, notes that the language of the Complaint is imprecise as to whether both Plaintiffs together or Ms. Fagan alone own the equity investment in Byana.

[10] The Court notes that is an open question whether the membership interests in Byana constitute a "security" under the meaning of the Exchange Act. *See infra* Section iii. However, Plaintiffs have plausibly alleged that the membership interests are a security, sufficient to survive review on this Motion to Dismiss.

Plaintiffs had already purchased the equity. Plaintiffs counter that even though Breitweiser Defendants did not directly make any misrepresentations to Plaintiffs prior to the purchase of the securities, Breitweiser Defendants failed to inform Plaintiffs of their fraudulent intentions, thereby inducing Plaintiffs to purchase the membership interests in Byana through material omissions.

However, "non-disclosure of material information will not give rise to liability under Rule 10b–5 unless the defendant had an affirmative duty to disclose that information." *Oran v. Stafford*, 226 F.3d 275, 285 (3d Cir. 2000). Indeed, "silence, absent a duty to disclose, is not misleading under Rule 10b–5." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n 17 (1988). Such a duty to disclose may arise in instances of insider trading, a statute requiring disclosure, or an inaccurate, incomplete, or misleading prior disclosure. *Oran*, 226 F.3d at 286. Here, Plaintiffs have not alleged any circumstances under which Breitweiser Defendants would have an affirmative duty to disclose any material information prior to Plaintiffs' purchase of equity in Byana. Indeed, as alleged, Plaintiffs were induced by Mr. Fischer and Mr. Carroll to purchase securities in Byana and Fischer Capital, well before Breitweiser Defendants were alleged to have committed any wrongdoing. And, Plaintiffs have not alleged that Breitweiser Defendants somehow participated in making any misrepresentations to Plaintiffs before the sale of the equity and debt investments. Furthermore, even if a duty to disclose on the part of Breitweiser Defendants arose when Ms. Fagan became a member of Byana, any non-disclosure by Breitweiser Defendants after her membership would not be actionable under Ruble 10b-5, because such a cause of action only involves "the purchase or sale of any security." *See* 17 C.F.R. § 240.10b-5. Consequently, Plaintiffs have failed to adequately plead a Section 10(b) claim against Breitweiser Defendants.

20

### iii.    *Federal RICO Violations*

To state a federal RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege four

elements:

(1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, either directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that the defendant participated through a pattern of racketeering activity that included at least two racketeering acts.

*Annulli v. Panikkar*, 200 F.3d 189, 198 (3d Cir.1999) *overruled on other grounds by Rotella v.*

*Wood*, 528 U.S. 549 (2000); *Andela v. American Ass'n For Cancer Research*, 389 Fed.Appx. 137,

142 n. 6 (3d Cir. 2010) (citing *Annulli*, 200 F.3d 189).

Here, Plaintiffs allege that Defendants, including Breitweiser Defendants, "engaged in a

pattern of unlawful and racketeering conduct to facilitate common schemes to defraud investors .

. . all of which occurred across interstate lines." Compl. ¶ 38. This "racketeering conduct"

allegedly included multiple acts of mail and wire fraud, first to induce Plaintiffs to make equity

and debt investments in Byana and Fischer Capital, and subsequently to prevent Plaintiffs from

discovering Defendants' fraud. Compl. ¶¶ 138-41. As these claims pertain to Breitweiser

Defendants specifically, Plaintiffs allege that (1) on April 2, 2007, Breitweiser Defendants sent

Plaintiffs a letter containing falsified tax documents; (2) on September 17, 2013, Breitweiser

Defendants sent Plaintiffs an email denying their request for Byana's tax records and

misrepresenting that they could not provide the records out of concern for information security;

and (3) on February 20, 2014, Breitweiser Defendants sent Plaintiffs an email again refusing to

provide them with the tax records, ostensibly because Plaintiffs were not authorized to access

them, despite Breitweiser Defendants' knowledge that as a member of Byana, Ms. Fagan was

authorized to the view the records. Compl. ¶¶ 138, 141.

21

Breitweiser Defendants contend that Plaintiffs have failed to adequately allege that Breitweiser Defendants committed the predicate acts of mail and wire fraud to state a federal RICO claim against them. And more generally, Breitweiser Defendants contend that Plaintiffs have failed to plead the necessary predicate acts to state a federal RICO claim against all Defendants, because securities fraud, and associated acts of mail fraud and wire fraud, cannot serve as predicate acts for the purposes of a RICO claim. Importantly, Breitweiser Defendants do not take issue with any other elements of Plaintiffs' RICO claim. As such, the Court will only assess the sufficiency of the alleged predicate acts.

The statutory definition of "racketeering activity" includes mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343. 18 U.S.C. § 1961(1). "Where acts of mail and wire fraud constitute the alleged predicate racketeering acts, those acts are subject to the heightened pleading requirement of Rule 9(b)." *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002) (citing *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 657-58 (3d Cir. 1998)). To state a claim for mail or wire fraud, a plaintiff must allege: (1) the existence of a scheme to defraud; (2) the use of the mails or interstate wire, respectively, in furtherance of the fraudulent scheme; and (3) participation by the defendant with specific intent to defraud. *United States v. Dobson*, 419 F.3d 231, 237 (3d Cir. 2005) (citations omitted); *Annulli*, 200 F.3d at 200 n 9, 201.

Importantly, Breitweiser Defendants do not specifically identify which elements of a mail or wire fraud claim Plaintiffs have failed to allege. Instead, they generally contend that "there are no allegations of prior criminal actions to meet the predicate act standard, nor could there be any against such a reputable and well established professional and accounting firm." Defs. Bruce W. Breitweiser and Dunbar, Breitweiser & Co., LLP's Mem. of Law in Supp. of Mot. to Dismiss Pls.' Compl. under Fed. R. Civ. Pro. 12(b)(6) ("Defs.' Supp. Br.") 15. These arguments do not challenge

22

any of the elements necessary to plead a mail or wire fraud claim, and thus, do not provide a basis for the Court to assess whether Plaintiffs' allegations are insufficient.

Next, Breitweiser Defendants contend that Plaintiffs have failed to plead the necessary predicate acts to state a federal RICO claim against all Defendants, because securities fraud, and acts of mail fraud and wire fraud committed in connection with the securities fraud, cannot serve as predicate acts for the purposes of a RICO claim. Indeed, in 1995, to address the "significant number of frivolous [RICO] actions based on alleged securities law violations," Congress enacted the PSLRA, which amended the RICO Act by narrowing the definition of racketeering activity. *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327-28 (3d Cir. 1999) (internal quotations and citation omitted). The amended language of the RICO Act explicitly states:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, ***except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962***.

18 U.S.C. § 1964(c) (emphasis added).

Not only does the PSLRA prevent a plaintiff from pleading securities fraud as a predicate offense in a civil RICO claim, it also prevents a plaintiff from artfully "pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud." *Bald Eagle*, 189 F.3d at 328. To determine whether particular conduct may serve as the basis for a RICO predicate offense, a court must analyze "whether the conduct pled as predicate offenses is 'actionable' as securities fraud—not on whether the conduct is 'intrinsically connected to, and dependent upon' conduct actionable as securities fraud." *Id.* at 330.

23

Here, Breitweiser Defendants argue that all alleged predicate acts, including those of Breitweiser Defendants, arise out of securities fraud related to Plaintiffs' investments in Byana and Fischer Capital, and therefore those acts may not stand as predicates for a RICO claim. Indeed, if all of the alleged predicate acts are actionable as securities fraud, then Plaintiffs would have failed to state a federal RICO claim. *See id.* 330. However, Plaintiffs argue that more discovery is required to establish whether the equity and debt investments at issue are "securities" for the purposes of a securities fraud claim, and therefore it is inappropriate, at this juncture, to dismiss their RICO claim.

As discussed *supra*, a cause of action under Rule 10b-5 consists of the following elements: "(1) a material misrepresentation . . . (2) scienter, i.e., [defendant's] wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to ... as 'transactional causation'; (5) economic loss; and (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss." *Dura Pharm.*, 544 U.S. at 341-42; *McCabe*, 494 F.3d at 424; *In re Bradley*, 421 F. Supp. 2d at 826.

Plaintiffs contend that because it is unclear, under the facts presently known and plead, whether their equity and debt investments in Byana and Fischer Capital are "securities" within the meaning of the Exchange Act, the alleged mail and wire fraud related to these investments may not be actionable as securities fraud. Breitweiser Defendants do not counter this argument, but rather appear to assume that because Plaintiffs have also brought a federal securities claim based on acts surrounding their equity investment in Byana, Plaintiffs have *de facto* conceded that all

investments at issue, including the debt investments, are securities.[11] However, the inquiry here on a Rule 12(b)(6) motion, is whether Plaintiffs' RICO claim plausibly states predicate acts that are not actionable as securities fraud. *See Connelly*, 2016 U.S. App. LEXIS 366, at *10-11 (quotations and citations omitted) (on a motion to dismiss a court must "determine whether [the allegations] plausibly give rise to an entitlement to relief"). It would be inappropriate to dismiss Plaintiffs' RICO claim on this basis, only to have the parties determine through subsequent discovery, that the investments are not securities. Indeed, based solely on the facts plead in the Complaint, I cannot find at this time that Plaintiffs' purported investments are securities.

Plaintiffs' investments consist of a 10% membership interest in Byana, and loans to Byana and Fischer Capital under certain promissory notes. The analysis of whether membership interests in an LLC or debt investments made pursuant to promissory notes are securities, is legally and factually complex. *See infra*. However, neither party provides any legal or factual argument analyzing whether these equity and debt investments are indeed securities under the meaning of the Exchange Act.

Section 3(a)(10) of the Exchange Act defines a "security" as follows:

> any note, stock, treasury stock, security future, security-based swap, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange

---

[11] Plaintiffs are entitled to plead in the alternative. In that regard, because open questions remain as to whether the investments at issue are securities, Plaintiffs can plead both securities fraud and Federal RICO at this time. Indeed, Plaintiffs represent that they intentionally pled Federal RICO, cognizant that it would only be appropriate if the investments at issue were not securities, subject to federal securities laws. *See* Pls.' Opp'n Br. at 11

relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

15 U.S.C. § 78c(10).

Although an LLC membership interest is not explicitly included in this definition of a security, courts routinely consider the possibility that LLC membership interests may be considered an "investment contract" or "stock." *See, e.g., Robinson v. Glynn*, 349 F.3d 166, 173 (4th Cir.2003); *Great Lakes Chemical Corp. v. Monsanto Co., 96 F. Supp. 2d 376, 387* (D.Del.2000); *Sync Labs LLC v. Fusion Mfg.*, Civ. No. 2:11-03671, 2014 WL 37124, at *4 (D.N.J. Jan. 6, 2014). In *S.E.C. v. W.J. Howey Co.*, the Supreme Court determined that an investment instrument is an "investment contract," and therefore subject to securities laws, if it involves: (1) "an investment of money," (2) "in a common enterprise," (3) "with profits to come solely from the efforts of others." 328 U.S. 293, 301 (1946). Alternatively, where an instrument is both labelled "stock" and bears the usual characteristics of stock, it is considered "stock" and also subject to federal securities laws. *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 686 (1985). In *Landreth*, the Supreme Court identified those characteristics usually associated with stock as "(i) the right to receive dividends contingent upon an apportionment of profits; (ii) negotiability; (iii) the ability to be pledged or hypothecated; (iv) the conferring of voting rights in proportion to the number of shares owned; and (v) the capacity to appreciate in value." *Id*. at 686.

Additionally, to determine whether an investment instrument denominated a "note" is a security within the meaning of the Exchange Act, courts apply the "family resemblance" test. *Reves v. Ernst & Young*, 494 U.S. 56, 67 (1990). Under this test, every note is presumed to be a

security, but this presumption can be overcome if the note satisfies either step of a two-tiered analysis. *Id.* at 65. Under the first step, courts compare the note in question to a list of the several types of notes that the Supreme Court has specifically stated are not securities. *Id.* These include notes delivered in consumer financing, notes secured by a mortgage on a home, short-term notes secured by a lien on a small business or some of its assets, notes evidencing a character loan to a bank customer, short-term notes secured by an assignment of accounts receivable, notes which simply formalize an open-account debt incurred in the ordinary course of business, and notes evidencing loans by commercial banks for current operations. *Id.* When making this comparison, courts are to consider the following four factors: (1) the parties' motivations for entering into the transaction; (2) the plan of distribution of the instrument; (3) the reasonable expectations of the investing public; and (4) whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering the application of the Exchange Act unnecessary. *Id.* at 66-67. "Failure to satisfy one of the factors is not dispositive since they are considered as a whole." *Robyn Meredith, Inc. v. Levy*, 440 F. Supp. 2d 378, 384 (D.N.J. 2006) (citing *McNabb v. SEC*, 298 F.3d 1126, 1132-33 (9th Cir. 2002)). However, if the note cannot satisfy any of the four factors, or if it corresponds to an item on the list of enumerated non-securities, then the note will not be classified a "security." *Reves*, 494 U.S. at 67. The court then moves on to step two, which is deciding whether a new category should be added to the list of non-securities. *Id*. at 67.

As the case law set forth above illustrates, the determination of whether Plaintiffs' investments in Byana and Fischer Capital are considered securities relies on in-depth analysis and weighing of relevant factors. In that regard, Breitweiser Defendants have provided no explanation as to why, under the facts as plead, the debt and equity investments at issue should be considered

securities as a matter of law. Consequently, the Court has no basis to find that the predicate acts alleged by Plaintiffs are actionable as securities fraud, and thereby barred as a basis for Plaintiffs' RICO claim. Therefore, the Motion to Dismiss Plaintiffs' federal RICO claim is denied, at this juncture. However, the Court does not make a finding as to whether Plaintiffs' investments are indeed securities.

### iv. *Conspiracy to Commit Federal RICO Violations*

The federal RICO Act expressly creates a cause of action against any person who "conspire[s] to violate" the RICO Act. 18 U.S.C. § 1962(d) ("Section 1962(d)"). Under Section 1962(d), "[a] defendant may be held liable for conspiracy to violate section 1962(c) if he knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise." *Smith v. Berg*, 247 F.3d 532, 538 (3d Cir. 2001). Because this provision of the RICO Act is interpreted in light of the common law of criminal conspiracy, even if only some of the conspirators perpetrate the crime and others only provide support, all that is necessary to show a conspiracy is to plead that the conspirators share a common purpose. *Id.* at 537 (citing *Salinas v. United States*, 522 U.S. 52, 64 (1997)).

Here, Breitweiser Defendants assert that Plaintiffs have not pled any facts to show that Breitweiser Defendants plausibly made an agreement with the Fischer Defendants to commit at least two predicate acts of RICO. However, Plaintiffs have pled that Breitweiser Defendants conspired with Mr. Fischer based on the email that Mr. Fischer sent to Breitweiser Defendants stating that "Bruce needs to use his 'secret sauce recipe." This correspondence, Plaintiffs argue, suggests that Mr. Fischer instructed Breitweiser Defendants to doctor the financial records of Byana to conceal any acts of fraud allegedly committed by Fischer Defendants. Further, Plaintiffs allege that Breitweiser Defendants supported the Fischer Enterprise's commission of racketeering

acts by fraudulently altering the financial records of Byana, filing false tax returns with the IRS, and making misrepresentations to Plaintiffs regarding Plaintiffs' right to access Byana's tax records. These allegations are sufficient to plausibly show that Breitweiser Defendants and Mr. Fischer conspired with a common purpose to defraud investors. Accordingly, the Motion to Dismiss Plaintiffs' claim of conspiracy to commit federal RICO is denied.

### v.   New Jersey RICO Violations

The New Jersey civil RICO statute states, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity." N.J.S.A. 2C:41–2(c). Generally, the New Jersey RICO statute "makes it a crime for a person to be employed by or associated with 'an enterprise' and to engage or participate or become involved in the business of the enterprise 'through a pattern of racketeering activity.'" *Ball*, 661 A.2d at 255 (quoting N.J.S.A. 2C:41-2b and 2c). "Any person damaged in his business or property by reason of a violation of [the New Jersey RICO statute] may sue therefor in any appropriate court and shall recover threefold any damages he sustains and the cost of the suit. . . ." N.J.S.A. 2C:41–4(c). New Jersey RICO is broader in scope and is construed more liberally than the federal RICO Act. *See State v. Bisaccia,* 724 A.2d 836, 846 (N.J. App. Div. 1999) (citation omitted). Indeed, unlike its federal counterpart, the New Jersey RICO statute includes securities fraud as a predicate act. *See* N.J.S.A. 2C:41-1(a)(p).

To state a New Jersey RICO claim, a plaintiff must allege "(1) the existence of an enterprise; (2) that the enterprise engaged in or its activities affected trade or commerce; (3) that defendant was employed by, or associated with the enterprise; (4) that he or she participated in the conduct of the affairs of the enterprise; and (5) that he or she participated through a pattern of

29

racketeering activity." N.J.S.A. 2C:41-2c. "Courts have held that a claimant pleading a New Jersey RICO violation must comport with Rule 9(b)'s heightened pleading requirements for fraud." *Fimbel v. Fimbel Door Corp.*, Civ. No. 14-1915, 2014 WL 6992004, at *6 (D.N.J. Dec. 10, 2014); s*ee e.g.*, *Construcciones Haus Soceidad v. Kennedy Funding Inc.*, Civ. No. 07-CV-0392, 2008 WL 1882857, at *5 (D.N.J. Apr. 24, 2008); *Capital First Corp., v. Todd*, Civ. No. 04-6439, 2006 WL 3827329, at *15 (D.N.J. Dec. 27, 2006). A plaintiff must also allege that the New Jersey RICO violation proximately caused her injuries; if a plaintiff is harmed only indirectly by the predicate acts, the plaintiff does not have standing to pursue a claim. *Interchange State Bank v. Veglia*, 668 A.2d 465, 472 (N.J. App. Div. 1995).

Here, Plaintiffs allege that Defendants, including Breitweiser Defendants, conspired to form the Fischer Enterprise, which engaged in a number of racketeering activities, including: violating the NJUSL by fraudulently inducing Plaintiffs to invest in Byana; with these same acts, engaging in theft by deception, in violation of N.J.S.A. 2C:20-4(a); and preventing Plaintiffs from acquiring information, such as tax documents, which delayed their discovery of Defendants' misrepresentations, in violation of N.J.S.A. 2C:20-4(b) and (c). Compl. ¶¶ 161, 165-169. Plaintiffs allege that as a "proximate result of these racketeering activities by Defendants, Plaintiffs have suffered injury to their business and property," in the form of their lost $2,250,000 in equity and debt investments, injuries to their business and property generally, and attorneys' fees associated with this action. Compl. ¶¶ 167, 173.

Rather than challenging the sufficiency of Plaintiffs' allegations with respect to the elements of a New Jersey RICO claim, Breitweiser Defendants only argue that Plaintiffs do not have standing to bring this claim against them because there is no direct connection between

Breitweiser Defendants' alleged racketeering acts and the injuries suffered by Plaintiffs.[12] Thus the Court will only address this issue.

To determine whether a racketeering act is the proximate cause of a plaintiff's injury, a court must examine the chain of events to determine if the plaintiff was directly injured by the predicate acts. *Interchange*, 668 A.2d at 474. Indeed, it may be the case that a predicate act was a "but for" and foreseeable cause of the plaintiffs' injury, but the required direct nexus between the act and the injury is lacking. *Id.* Here, while Breitweiser Defendants' alleged racketeering actions, i.e. making false representations to Plaintiffs regarding the status and tax records of Byana and filing false and misleading tax documents with the IRS, all occurred after Plaintiffs had already invested in Byana and Fischer Capital, Plaintiffs also allege that Ms. Fagan was required to pay taxes, interest, and penalties on income that she never received as a direct result of Breitweiser Defendants' filing of a false tax returns for Byana in 2011. Compl. ¶¶ 11, 166. Moreover, by allegedly misrepresenting to Plaintiffs the health and tax status of Byana, Breitweiser Defendants directly caused Ms. Fagan to pay to the IRS additional interest and penalties on these back-taxes.[13] Compl. ¶¶ 11, 168. On the basis of these allegations, Plaintiffs have arguably raised predicate acts

---

[12] The Court notes that Breitweiser Defendants also appear to raise a choice-of-law question, stating: "Plaintiffs are Florida residents and Breitweiser is an Illinois CPA. There are no facts in the Complaint to show why the New Jersey RICO statute would apply to dealings between them." Defs.' Supp. Br. at 21. However, neither party provided any legal arguments as to the applicable law in this matter, and moreover, briefed all issues under New Jersey law. Consequently, the Court will not discuss choice of law in this Opinion.

[13] When the underlying predicate act sounds in fraud, defendants are generally only liable to the intended victim. *Interchange*, 668 A.2d at 474 (citing *Matter of EDC*, 930 F.2d 1275, 1279 (7th Cir. 1991)). However, a plaintiff "need not be the primary victim, only an intended victim." *Id.* at 474. Here, although the IRS is arguably an intended victim of Breitweiser Defendants' alleged fraud, Ms. Fagan was also an intended victim because the Fischer Enterprise withheld from her the interest and capital gains falsely reported to the IRS.

31

of theft by deception in violation of N.J.S.A. 2C:20-4. Therefore, Ms. Fagan, if not both Plaintiffs,[14] has standing to bring a New Jersey RICO claim against Breitweiser Defendants, and the Motion to Dismiss this claim is denied.

### vi.     Common Law Fraud

The elements of common law fraud under New Jersey law are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Triffin v. Automatic Data Processing, Inc.*, 926 A.2d 362, 368 (N.J. App. Div. 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)). Of these, "[m]isrepresentation and reliance are the hallmarks of any fraud claim, and a fraud cause of action fails without them." *Banco Popular N. Am. v. Gandi,* 876 A.2d 253, 261 (N.J. 2005). Additionally, where the defendant has a fiduciary relationship with the plaintiff such that they had a duty to disclose information, "[t]he deliberate suppression of a material fact that should be disclosed is viewed as equivalent to a material misrepresentation . . . ." *Winslow v. Corp. Express, Inc.,* 834 A.2d 1037, 1044 (N.J. App. Div. 2003) (quotations and citation omitted).

As with any fraud claim, claims of New Jersey common law fraud are subject to the Rule 9(b) particularity requirement. *See In re Rockefeller*, 311 F.3d at 216. Plaintiffs contend that because the specific facts of the fraud at issue are peculiarly within Defendants' control, the Court should relax its application of Rule 9(b). *See Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) ("Courts must be sensitive to the fact that application of Rule 9(b) prior to discovery

---

[14] The Court notes, again, that due to the imprecise wording of the Complaint, it is not entirely clear that Ms. Fagan is the only one of the two Plaintiffs who was actually compelled to pay the allegedly erroneous taxes, interest, and penalties.

may permit sophisticated defrauders to successfully conceal the details of their fraud." (quotations and citation omitted)). However, even setting aside Rule 9(b) particularity, Plaintiffs have not adequately alleged all elements of common law fraud against Breitweiser Defendants.

Plaintiffs allege that Defendants, with intent to defraud, made material misrepresentations and omitted material statements of fact to Plaintiffs, upon which Plaintiffs reasonably relied, and which induced Plaintiffs to invest in Byana and Fischer Capital. The specific incident of fraud alleged is the inducement to invest in Byana and Fischer Capital. However, as Breitweiser Defendants point out, all of their alleged acts of false representation, i.e., cooking Byana's books, filing false tax returns, and refusing to provide Plaintiffs with tax records and misrepresenting their reasons for doing so, occurred after Plaintiffs had already invested their money. Moreover, as discussed *supra,* Breitweiser Defendants had no relationship with Plaintiffs – fiduciary or otherwise – prior to Ms. Fagan's membership in Byana. Therefore, Breitweiser Defendants had no duty to disclose any information to Plaintiffs. And, there are no allegations that Breitweiser Defendants had any involvement in the events prior to Plaintiffs' investment. Plaintiffs have failed to plead the necessary elements of misrepresentation and reliance to state a common law fraud claim against Breitweiser Defendants.

### vii.   *Aiding and Abetting Common Law Fraud*

Breitweiser Defendants also contend that Plaintiffs have failed to allege with adequate particularity that Breitweiser Defendants aided and abetted the commission of common law fraud. To plead aiding and abetting fraud under New Jersey common law, "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the

33

principal violation." *State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 775, 784 (N.J. App. Div. 2006) (quotations and citation omitted).

As discussed *supra*, Plaintiffs allege that Defendants committed New Jersey common law fraud when Defendants induced Plaintiffs to make investments on the basis of material misrepresentation and omissions. However, Plaintiffs have not alleged that any of Breitweiser Defendants' actions aided and abetted Mr. Fischer and Mr. Carroll in their underlying fraud of persuading Plaintiffs to invest. Indeed, the bulk of the specific alleged acts of Breitweiser Defendants — i.e., filing fraudulent tax returns, refusing to provide Plaintiffs with tax records, and misrepresenting to Plaintiffs their right to access the tax records — occurred after the alleged fraud. Thus, Breitweiser Defendants' alleged acts could not have affected Plaintiffs' decision to invest, or aided and abetted Mr. Fischer and Mr. Carroll's commission of the alleged fraud. Even under a relaxed application of Rule 9(b), Plaintiffs have failed to plausibly allege that Breitweiser Defendants assisted the Mr. Fischer and Mr. Carroll in committing common law fraud. This claim is dismissed without prejudice.

### viii.    *Equitable Fraud*

For the same reasons why Plaintiffs failed to state a common law fraud claim against Breitweiser Defendants, Plaintiffs have not adequately alleged facts to sustain their equitable fraud claim against them. In general, New Jersey equitable fraud requires proof of: (1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental reliance by the other party. *Jewish Ctr. of Sussex Cty. v. Whale*, 432 A.2d 521, 524 (N.J. 1981) (citation omitted). Unlike a claim for legal fraud, there need not be proof that the statement was made with knowledge that it was false. *Id.* In other words, a party seeking rescission based on equitable fraud need not prove "knowledge of the falsity and an

34

intention to obtain an undue advantage therefrom." *Bonnco Petrol, Inc. v. Epstein*, 560 A.2d 655, 660 (N.J. 1989) (citation omitted). "Even an innocent misrepresentation can constitute equitable fraud justifying rescission." *Ledley v. William Penn Life Ins. Co.*, 651 A.2d 92, 95 (N.J. 1995). Because, as discussed *supra*, Plaintiffs have not alleged that Breitweiser Defendants made any material misrepresentations or material omissions that induced them to invest in Byana and Fischer Capital, Plaintiffs have failed to plead the requisite misrepresentation and reliance to state a claim of equitable fraud against these defendants.

    **ix.**    *Conversion*

    Plaintiffs allege that all Defendants, including Breitweiser Defendants, converted $2.25 million of Plaintiffs' investment funds by intentionally interfering and exercising dominion and control over those funds, thereby depriving Plaintiffs of the use of their property. Indeed, the common law tort of conversion in New Jersey is defined as the "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Chicago Title Ins. Co. v. Ellis*, 978 A.2d 281, 287 (N.J. App. Div. 2009), *cert. denied*, 983 A.2d 1113 (N.J. 2009) (quoting *Restatement (Second) of Torts* § 222A(1) (1965)). This tort has been applied to "money, bonds, promissory notes, and other types of securities, as long as the plaintiff has an actual interest in the security and it is capable of misuse in a way that would deprive the plaintiff of its benefit." *Cargill Global Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 578 (D.N.J. 2010); *Bondi v. Citigroup, Inc.*, 32 A.3d 1158, 1190 (N.J. App. Div. 2011).

    Here, Breitweiser Defendants argue that Plaintiffs have failed to allege a conversion claim against them because Breitweiser Defendants are not alleged to have exercised dominion or control over Plaintiffs' investment funds. Without any allegations of control, Breitweiser Defendants

contend that the claim for conversion cannot lie. In response, Plaintiffs maintain that Breitweiser Defendants did indeed exercise control because these defendants were involved in perpetuating the alleged schemes to defraud and convert monies. In that regard, Plaintiffs further argue that even if Breitweiser Defendants were unaware of the fraud, so long as these defendants benefitted from the converted monies, they are liable for conversion.

The flaw in Plaintiffs' argument, however, is that even if Breitweiser Defendants assisted Mr. Fischer and Mr. Carroll in defrauding Plaintiffs, Plaintiffs fail to allege that Breitweiser Defendants actually received, or benefitted from, any of the alleged converted monies. None of the cases cited by Plaintiffs are helpful. In both *Federal Ins. Co. v. Smith*, 63 Fed. Appx. 630, 634 (4th Cir. 2003) and *Digital Camera Int'l Ltd. v. Antebi*, No. 1823, 2014 WL 940723, at \*5-3 (E.D.N.Y. Mar. 11, 2014), the courts there found that an innocent **recipient** of converted funds would be liable for conversion only if that recipient actually benefited personally from those funds. Indeed, here, there are no allegations in the Complaint setting forth how Breitweiser Defendants benefited financially from the alleged converted monies. And, there are no allegations that Breitweiser Defendants even received any of the investment funds from Plaintiffs. Absent those allegations, Plaintiffs cannot state a claim of conversion against Breitweiser Defendants.

### x.   *Unjust Enrichment*

For the same reasons why Plaintiffs failed to state a conversion claim against Breitweiser Defendants, Plaintiffs have not adequately alleged facts to sustain their unjust enrichment claim. In New Jersey, "[t]o establish a claim for unjust enrichment . . . a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 196 (D.N.J. 2012). A plaintiff must allege that (1) at plaintiff's expense; (2) defendant received benefit; (3) under circumstances

36

that would make it unjust for defendant to retain said benefit without paying for it. *Maniscalco v. Brother Intern. Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009). Here, Plaintiffs have failed to allege that Breitweiser Defendants received any benefit from the investment funds given by Plaintiffs to Fischer Defendants. Without any benefits, Plaintiffs' unjust enrichment claim fails.

> ### xi.    *Negligent Misrepresentation, Professional Negligence, and Breach of Fiduciary Duty*

Breitweiser Defendants contend that in each of the remaining claims asserted against them, i.e., negligent misrepresentation, professional negligence, and breach of fiduciary duty, Plaintiffs have failed to allege that Plaintiffs had a direct client relationship with Breitweiser Defendants. I disagree.

In New Jersey, liability of accountants is governed by the Privity Statute. That statute states in relevant part:

> b. Notwithstanding the provisions of any other law, no accountant shall be liable for damages for negligence arising out of and in the course of rendering any professional accounting service unless:
> (1) The claimant against the accountant was the accountant's client; or
> (2) The accountant:
> (a) knew at the time of the engagement by the client, or agreed with the client after the time of the engagement, that the professional accounting service rendered to the client would be made available to the claimant, who was specifically identified to the accountant in connection with a specified transaction made by the claimant;
> (b) knew that the claimant intended to rely upon the professional accounting service in connection with that specified transaction; and
> (c) directly expressed to the claimant, by words or conduct, the accountant's understanding of the claimant's intended reliance on the professional accounting service.

N.J.S.A. 2A:53A-25(b).

Based on various allegations made in the Complaint, I find that Plaintiffs have alleged sufficiently that Breitweiser Defendants knew that Ms. Fagan, as a member of Byana, would rely

37

upon Breitweiser Defendants' accounting services. Indeed, in the Complaint, Plaintiffs aver that, at the very least, they relied on these defendants to provide accurate tax records, which Breitweiser Defendants allegedly failed to do. It is certainly a plausible inference that Plaintiffs, while they did not directly hire Breitweiser Defendants as accountants, nevertheless counted on these defendants' services for the purposes of managing their investments in Byana. Moreover, there could be no dispute that, under the facts alleged, Breitweiser Defendants intended for Plaintiffs to rely on their accounting services, because Breitweiser Defendants allegedly filed false tax returns on behalf of Byana, of which Ms. Fagan was a member. Accordingly, I find that Plaintiffs' allegations meet one of the exceptions to the Privity Statute. Other than this particular argument, Breitweiser Defendants do not contend that each of the causes of actions addressed in this section suffer from any other pleading deficiencies. As such, Breitweiser Defendants' Motion is denied as to Plaintiffs' claims for negligent misrepresentation, professional negligence, and breach of fiduciary duty.

## IV.     Conclusion

Breitweiser Defendants' Motion to Dismiss is granted in part and denied in part. Under the applicable statute of limitations, Plaintiffs' claim against Breitweiser Defendants for violation of Section 12(a)(2) of the Exchange Act (Count V) is dismissed with prejudice, and Plaintiffs' claim against Breitweiser Defendants for violation of the NJUSL (Count VI) is dismissed without prejudice. Plaintiffs' claims against Breitweiser Defendants for violation of Section 10(b) of the Exchange Act (Count IV), common law fraud (Count VII), aiding and abetting common law fraud (Count VIII), equitable fraud (Count IX), conversion (Count X), and unjust enrichment (Count XI) are dismissed without prejudice for failure to state a claim. As to Plaintiffs' remaining claims against Breitweiser Defendants for state and federal RICO violations (Counts I & III), conspiring to commit federal RICO violations (Count II), negligent misrepresentation (Count XIII),

professional negligence (Count XIV), and breach of fiduciary duty (Count XV), Breitweiser Defendants' Motion to Dismiss is denied. The Court directs Plaintiffs to amend their Complaint to specifically identify who owns each investment at issue, and who has been damaged.

Date: January 28, 2016

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. District Judge