*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

**TINA FAGAN** and **MICHAEL FAGAN**,

              Plaintiffs,

     v.

**K. SCOTT FISCHER**, **VERONIKA M. FISCHER**, **BRIAN E. CARROLL**, **BRUCE W. BREITWEISER**, **FISCHER INVESTMENT CAPITAL, LLC**, **BYANA, LLC**, **PRIVATE CAPITAL, LLC**, **FUNDER, LLC**, **BOWDER, LLC**, **WEALTH CAPITAL GROUP, LLC**, **DUNBAR BREITWEISER & COMPANY, LLP**, **JOHN/JANE DOES 1-5**, fictitious individuals to be named after discovery, and **ABC CORPS. 1-5**, fictitious corporate entities to be named after discovery,

              Defendants.
_____

Civil Action No. 14-7013 (FLW) (TJB)

OPINION

**WOLFSON, United States District Judge:**

In the present matter Defendants K. Scott Fischer, Veronika M. Fischer, Brian E. Carroll, Fischer Investment Capital, LLC ("Fischer Capital"), Byana, LLC ("Byana"), Private Capital, LLC ("Private Capital"), Funder, LLC ("Funder"), Bowder, LLC ("Bowder"), and Wealth Capital Group, LLC's ("Wealth Capital") (collectively, the "Fischer Defendants") appeal the Magistrate Judge's July 24, 2017 Order granting, in part, Plaintiffs Tina Fagan and Michael Fagan's (collectively, "Plaintiffs") motion to compel.

This case arises from a failed business relationship between Plaintiffs, Fischer Defendants, Bruce W. Breitweiser and Dunbar Breitweiser & Company, LLP (collectively

1

"Breitweiser Defendants"), and John/Jane Does (together with Fischer Defendants and Breitweiser Defendants, "Defendants"). The present appeal concerns the Magistrate Judge's order requiring Breitweiser Defendants to produce over 800 non-attorney-client documents concerning non-party Fischer related entities that Breitweiser Defendants had previously withheld due to their assertion of confidentiality. For the reasons that follow, the Court affirms the Magistrate Judge's July 24, 2017 Order.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts—which were outlined in detail by this Court's Opinions of July 14, 2015 and January 28, 2016 (*See* Dkt. Nos. 41 and 46)—are not disputed for the purposes of this appeal. The case arises from Plaintiffs' allegedly failed investments in (1) the Derbyshire Project, a real estate development in North Carolina, and (2) Fischer Capital, an investment company focused on the acquisition and development of small market enterprises.

In 2006, on the advice of Defendant K. Scott Fischer, Plaintiffs made equity and debt investments in Byana, a corporate investment vehicle used to fund the Derbyshire Project. In 2007, again on the advice of Mr. Fischer, Plaintiffs gave investment loans of $750,000, pursuant to certain promissory notes, to Fischer Capital. The Derbyshire Project eventually collapsed financially, and Defendants Byana and Fischer Capital defaulted on the loans made by Plaintiffs.

Consequently, on November 7, 2014, Plaintiffs filed a Complaint against Defendants, asserting claims for violations of state and federal RICO statutes, conspiring to commit RICO violations, common law fraud, aiding and abetting common law fraud, equitable fraud, state and federal securities violations, conversion, unjust enrichment, breach of contract, negligent misrepresentation, professional negligence, and breach of fiduciary duty. In the Complaint, Plaintiffs allege that Mr. Fischer and Defendant Brian E. Carroll, working on behalf of a criminal

enterprise, to which all Defendants are members (the "Fischer Enterprise"), made material misrepresentations and omissions to Plaintiffs to induce them to invest in Byana and Fischer Capital. In addition, Plaintiffs allege that in 2011, Breitweiser Defendants made fraudulent adjustments to Byana's books and knowingly made false tax statements on behalf of Byana, which ultimately resulted in Ms. Fagan being audited by the IRS. Plaintiffs cited to, *inter alia*, an email communication between Mr. Fischer and Mr. Breitweiser, in which Mr. Fischer stated that "Bruce needs to use his 'secret sauce recipe,'" and alleged that Breitweiser Defendants regularly falsified Byana's financial records and tax returns.

In addition to this litigation, certain Fischer Defendants filed a slander of title action against Plaintiffs in North Carolina based on an allegedly improper notice of *lis pendens* that Plaintiffs filed as a result of this lawsuit (the "North Carolina Action"). The parties engaged in extended written, documentary, and testimonial discovery in the North Carolina Action. As relevant here, Tina Fagan testified during a deposition about the non-party Fischer-related entities' alleged involvement in the fraudulent scheme: "All these names, you know, Bowder, Wealth Capital, just all these LLCs all popped, up and it just – it's all – its's all very fishy." During his deposition, Michael Fagan also testified:

> A. You know, I just—I don't understand. I get confused with everything now. You know, as far as how he uses his LLCs to, you know, perpetrate the fraud against us.
> Q. And how—how did he do that?
> A. I just think like we said yesterday that, you know, he's got dozens and dozens of LLCs and bank accounts and it's - - he uses them in furtherance of the fraud against us.
> Q. Do you have anything—any reason to believe right now that any of those LLCs are not actually operating?
> A. I don't know.

During discovery, Plaintiffs filed a motion to compel before the Magistrate Judge, seeking various types of financial information from the Fischer and Breitweiser Defendants. In

addition to asking the Court to compel responses to eight interrogatories, all of which generally related to the individual Defendants' personal banking information and certain asset transfers, Plaintiffs also asked the Magistrate Judge to compel the production of over 800 non-attorney-client documents concerning various non-party Fischer-related entities, which Breitweiser Defendants refused to produce, arguing that they were unable to do so without Fischer Defendants' authorization, which Fischer Defendants refused to provide, or a court order. The 800+ documents include information regarding the non-party Fischer related entities' financial and tax records.

The Magistrate Judge ruled on Plaintiffs' motion to compel in a detailed Memorandum Opinion on July 24, 2017. Dkt. No. 78 (the "July 24 Opinion"). Over Fischer Defendants' opposition, the Court compelled the production of the 800+ documents, finding that "information concerning Defendants' financial dealings is unquestionably relevant." Dkt. No. 78 at 17. Additionally, the Magistrate Judge also found that:

> [T]he documents being withheld as "confidential" are relevant to Plaintiffs' remaining claims as they concern the relationships between the companies alleged to have been controlled and misused by Defendants. Further, given the allegations set forth in the Second Amended Complaint as well as the discovery produced to date, such as the "secret sauce recipe" email, the Court is not convinced that any privacy considerations of the parties or non-party entities outweighs Plaintiffs' interest in obtaining the requested information. While other avenues of discovery, such as depositions, may be available by which Plaintiffs can seek out information contained in the withheld documents, they are not substitutes for the relevant paper discovery. As a result, the Breitweiser Defendants are directed to produce the withheld documents.

*Id*. at 30–31. On August 7, 2017, Fischer Defendants moved for reconsideration of the decision to compel the production of the 800+ documents, arguing that (1) that Plaintiffs' testimony in the North Carolina Action undermines the theory that the non-party entities are involved in any alleged fraudulent scheme; and (2) the operative caselaw holds that, where it is revealed in

4

subsequent discovery that a plaintiff's allegations are based on mere suspicion, discovery into those matters is inappropriate.

On November 1, 2017 the Magistrate Judge denied the motion in a 12-page letter order, concluding that she had not overlooked Plaintiffs' testimony from the North Carolina Action and that the purported "operative" cases were not controlling. Dkt. No. 99 (the "November 1 Order"). On November 14, 2017, Fischer Defendants filed the instant appeal.

## II. STANDARD OF REVIEW

At the outset, the parties dispute the standard under which this Court must review the Magistrate Judge's decision. Ordinarily, a magistrate judge's decision is to be overturned only to the extent that the ruling is "clearly erroneous or contrary to law." L. Civ. R. 72. 1(c)(1)(A). "The appellant bears the burden of demonstrating that the Magistrate Judge's decision meets the standard for reversal." *Depomed, Inc. v. Purdue Pharma L.P.*, No. CV 13-571, 2016 WL 6089699, at *3 (D.N.J. Oct. 14, 2016). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.,* 131 F.R.D. 63, 65 (D.N.J. 1990) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)). Moreover, "[a] ruling is 'contrary to law' when the magistrate judge has misinterpreted or misapplied the applicable law." *Doe v. Hartford Life & Accident Ins. Co.,* 237 F.R.D. 545, 548 (D.N.J. 2006) (citing *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co. Inc.*, 106 F.Supp.2d 761, 764 (D.N.J. 2000)). "A district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." *Andrews v. Goodyear Tire & Rubber Co., Inc.,* 191 F.R.D. 59, 68 (D.N.J. 2000) (citations omitted). Under the clearly erroneous standard, the reviewing court will not

5

reverse the magistrate judge's determination even if the court might have decided the matter differently. *Cardona v. Gen. Motors Corp.,* 942 F.Supp.968, 971 (D.N.J. 1996) (quoting *Toth v. Alice Pearl, Inc.,* 158 F.R.D. 47, 50 (D.N.J.1994)).

However, where an appeal seeks review of a matter within the purview of the magistrate judge, such as a discovery dispute, an even more deferential standard, the "abuse of discretion standard," must be applied. "Where a magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of discretion." *Kounelis v. Sherrer,* 529 F.Supp.2d 503, 518 (D.N.J. 2008); *see also Holmes v. Pension Plan of Bethlehem Steel Corp.,* 213 F.3d 124, 138 (3d Cir. 2000) (discovery orders reviewed for abuse of discretion). An abuse of discretion occurs "when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 115 (3d Cir.1976); *Farmers & Merchants Nat. Bank v. San Clemente Fin. Grp. Sec., Inc.,* 174 F.R.D. 572, 585 (D.N.J. 1997) (noting that there is "particularly broad deference given to a magistrate judge's discovery rulings").

Here, although Fischer Defendants argue that the Court should review the Magistrate Judge's discovery order under the "clearly erroneous" standard, the "abuse of discretion" standard clearly applies. *See, e.g., Mane Fils S.A. v. Int'l Flavors & Fragrances Inc.,* No. 06–2304, 2008 WL 4606313, *3 (D.N.J. Oct.15, 2008) ("Where the appeal seeks review of a matter within the broad discretion of the Magistrate Judge, such as a discovery dispute, an even more deferential standard, the abuse of discretion standard, is applied."); *see also Eisai Co. v. Teva*

*Pharm. USA, Inc.*, 629 F. Supp. 2d 416, 433 (D.N.J. 2009), *as amended* (July 6, 2009) (noting that a magistrate judge's ruling on non-dispositive matters such as discovery motions are "entitled to great deference and [are] reversible only for abuse of discretion.") (quoting *Kresefky v. Panasonic Commc'ns & Sys. Co.,* 169 F.R.D. 54, 64 (D.N.J. 1996)); *Cooper Hosp./Univ. Med. Ctr. v. Sullivan,* 183 F.R.D. 119, 127 (D.N.J. 1998); *Env't Tectonics Corp., Int'l v. W.S. Kirkpatrick & Co., Inc.,* 659 F.Supp. 1381, 1399 (D.N.J. 1987), *mod.,* 847 F.2d 1052 (3d Cir. 1988), *aff'd,* 493 U.S. 400 (1990). Indeed, there is no dispute that the Magistrate Judge applied the standard under Federal Rule of Civil Procedure 26. As such, I will review the Magistrate Judge's decision for abuse of discretion.

### III. DISCUSSION

Fischer Defendants argue that the Magistrate Judge erred in compelling production of the subject documents. Under Federal Rule of Civil Procedure 26, a court must "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed.R.Civ.P. 26(b)(2)(C). Rule 26(b)(1) in turn limits the scope of discovery to

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed.R.Civ.P. 26(b)(1). Courts bear in mind that "discovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it. The

7

plaintiff must have some basis in fact for the action." *Zuk v. E. Pa. Psychiatric Inst. of Med. Coll. of Pa.*, 103 F.3d 294, 299 (3d Cir. 1996).

Here, Fischer Defendants do not contest the relevance of 800+ non-party documents, nor do they argue that the discovery would be cumulative or overly burdensome. As Plaintiffs point out, "the documents are readily available, already Bates stamped, and in the possession of Breitweiser Defendants, not Fischer Defendants. All that needs to be done for the documents to be produced is for the Breitweiser counsel to hit send on an email with a PDF attached." Dkt. No. 103 at 17.

Rather, Fischer Defendants argue that Plaintiffs are engaged in a baseless "fishing expedition," and that the Magistrate Judge overlooked crucial evidence supporting this fact. They contend, first, the Judge did not adequately consider Plaintiffs' deposition testimony in the North Carolina Action. According to Fischer Defendants, this testimony, in which Tina Fagan described the non-party entities as "fishy" and Michael Fagan professed to not know whether "any of those LLCs are not actually operating," "confirms [Plaintiffs] have no reason to suspect any of these nonparties involvement in the purported fraudulent scheme." Dkt. No. 100-1 at 16. In Fischer Defendants' view, "the sole basis for Plaintiffs' allegation that over twenty non-party entities are involved in a scheme to defraud—which is their justification for seeking the 800+ documents at issue—is that the number of entities are 'fishy.'" *Id.* at 17–18. I disagree.

The Magistrate Judge in fact considered this exact testimony in both of her opinions, and reasonably concluded that discovery of the 800+ documents was still appropriate. Indeed, the July 24 Opinion references and discusses this exact testimonial language in full, and the November 1 Reconsideration Order, again, quotes the "fishy" testimony, explicitly stating:

> [I]t is clear that the Court considered the North Carolina matter, the testimony given by Plaintiffs therein and the Fischer Defendants'

8

> arguments regarding same. Indeed, the Court even quoted the "fishy" testimony relied upon by the Fischer Defendants in the instant motion for reconsideration in its Memorandum Opinion on Plaintiffs' motion to compel. Instead, the Court simply disagreed with the Fischer Defendants' assessment regarding same.

Dkt. No. 99 at 9. The Magistrate Judge disagreed with Fischer Defendants' position because other considerations demonstrated the legitimacy of the discovery request, including that the documents "concern the relationships between the companies alleged to have been controlled and misused by Defendants" as well as the documents' relevance to other "discovery produced to date, such as the 'secret sauce' email." Dkt. No. 78 at 30–31. Given the Magistrate Judge's consideration, and ultimate rejection, of the testimony—and her plausible reasons for compelling the discovery from the entities—I cannot find that these decisions were "arbitrary, fanciful or unreasonable." *Lindy Bros.*, 540 F.2d at 115.

Fischer Defendants next argue that the Magistrate Judge improperly disregarded *Micro Motion v. Kane Steel Co. Inc.*, 894 F.2d 1318 (Fed. Cir. 1990) and *Claude P. Bamberger Int'l, Inc. v. Rohm & Haas Co.*, No. CIV. 96-1041, 1998 WL 684263 (D.N.J. Apr. 1, 1998), which they argue allegedly stand for the proposition that "the post-filing revelation that a plaintiff's allegations are based on mere suspicion" means that "discovery into those matters is improper." Dkt. No. 100-1 at 2. I take issue with that argument for two reasons. First, the Magistrate Judge is only bound to consider "controlling" authority, and these two decisions—*Micro Motion* from the Federal Circuit and *Bamberger* an unpublished opinion from this District—do not constitute "controlling" authority in this context. *See Engers v. AT&T Corp.*, No. CIV.A. 98-3660, 2006 WL 3359722, at *4 (D.N.J. Nov. 20, 2006), *aff'd sub nom.* 466 F. App'x 75 (3d Cir. 2011) (holding that "the Second and Eleventh Circuit cases cited to by Plaintiffs, as well as the District Court cases, clearly do not constitute 'controlling decisions' sufficient to establish a proper basis

9

for reconsideration"); *see also Jamison v. Klem*, 544 F.3d 266, 278 n.11 (3d Cir. 2008). Indeed, Fischer Defendants concede that these decisions are "technically non-binding." Dkt. No. 104 at 3. Further, the Magistrate Judge could not, as a matter of law, have overlooked *Bamberger* because Plaintiffs did not present it in their opposition to Defendants' Motion to Compel. *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F.Supp. 159, 162 (D.N.J. 1988) (holding that L.Civ.R. 7.1(i) "does not . . . contemplate a Court looking to matters which were not originally presented"). Thus, the Judge did not abuse her discretion by considering *Micro Motion* and *Bamberger* in the July 24 Opinion.

Second, *Micro Motion* and *Bamberger* are distinguishable from this case. *Micro Motion* involved a patent infringement dispute in which the plaintiff, Micro Motion, sought discovery of financial records from a non-party, K-Flow. *Micro Motion*, 894 F.2d at 1321. In that case, the court ordered a new trial after the case had already been tried and discovery had been completed. *Id.* at 1320. The parties then agreed to "updated" discovery that would be limited to the issue of damages. *Id.* Micro Motion presented multiple divergent damages theories and sought discovery of financial information in order to prove either 1) that K-Flow's product infringed plaintiff's patent, or 2) K-Flow's product was an unacceptable non-infringing substitute for plaintiff's patent. *Id.* at 1321. The court noted that these theories were mutually exclusive and denied the discovery order on the basis of relevance. As the court explained, "the requested information is wholly irrelevant," and "Micro Motion has supplied no evidence or affidavit which indicates that Micro Motion has made a reasonable inquiry into the nature of K–Flow products." *Id.* at 1327. Setting aside that Fischer Defendants do not dispute the relevance of the requested materials, the factual scenario in *Micro Motion* is too dissimilar for comparison. Unlike the plaintiff in *Micro Motion*, Plaintiffs here do not seek to reopen discovery in order to uncover evidence supporting

10

one of multiple divergent theories. Rather, the requested documents "concern the relationships between the companies alleged to have been controlled and misused by Defendants," Dkt. No. 78 at 30, and are thus relevant to proving Plaintiff's RICO claims, which have already survived a motion to dismiss. Fischer Defendants' reliance on *Micro Motion* is thus inapposite.

Nor does *Bamberger* provide Fischer Defendants with the support that they claim it does. In *Bamberger,* the plaintiff, a longtime purchaser of acrylic scrap from defendant Rohm and Haas Company ("Rohm"), sued Rohm when it suddenly stopped selling to plaintiff even though plaintiff allegedly offered to pay higher prices than its competitors. *Bamberger*, 1998 WL 684263, at *1. The plaintiff sought extremely broad discovery into the financial records of Rohm and one of its competitors because the plaintiff alleged that Rohm must have been receiving kickbacks and other inducements from its competitors. *Id.* The district court *upheld* the magistrate judge's denial of the plaintiff's discovery requests, finding that the magistrate judge correctly concluded that the requests had no basis in fact. *Id.* at *3. Here, however, Fischer Defendants ask the Court to *reverse* the Magistrate Judge's order even though Plaintiff's requests are supported by significantly more detailed allegations than those in *Bamberger*. *See, e.g.*, Second Amended Compl. at ¶¶ 115–16 (alleging that Defendants funneled Plaintiffs' investments through the related entities and listing 20 of the suspected entities). And, as the Magistrate Judge found, the documents were relevant to show the relationships of the companies that Plaintiffs allege were controlled by Defendants to perpetrate the fraud against Plaintiffs. Thus, the Magistrate Judge did not overlook controlling or even persuasive case law in reaching her decision.

## IV. CONCLUSION

For the foregoing reasons, Fischer Defendants' appeal of the Magistrate Judge's July 24, 2017 Order is denied.


Dated: June 11, 2018                    /s/ Freda L. Wolfson
                                        Hon. Freda L. Wolfson
                                        United States District Judge